In re Cheryl Ann **STEWART**, Debtor.

No. 89–4131–S.

United States District Court,
D. Kansas.

Jan. 22, 1990.

---

N. Larry Bork, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for HEAF.

Jill A. Michaux, Topeka, Kan., for debtor.

Lloyd C. Swartz, Topeka, Kan., trustee.

Michael P. Mergen, Overland Park, Kan., for Pennsylvania Higher Educ. Ass'n.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on an appeal by the Higher Education Assistance Foundation (HEAF) from a June 6, 1989 order of the United States Bankruptcy Court for the District of Kansas confirming a Chapter 13 plan submitted by Cheryl Ann Stewart (hereafter, "Stewart"). HEAF argues that the bankruptcy court erred in finding that the plan was submitted in good faith, as required under 11 U.S.C. § 1325(a)(3), and that all of the debtor's disposable income was applied to make pay-

ments under the plan, as required by 11 U.S.C. § 1325(b)(1)(B).

This court finds that it has jurisdiction over this appeal under 28 U.S.C. § 158. The standards of review on appeal are well-settled. The district court functions as an appellate court and is authorized to affirm, reverse, or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bank.P. 8013. The district court may examine the bankruptcy court's conclusions of law *de novo. In re Mullet,* 817 F.2d 677, 679 (10th Cir.1987). The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. *Id.* at 678.

*HEAF's Motion to Supplement the Record on Appeal*

■ As an initial matter, the court must address whether the transcript of the debtor's Rule 2004 examination is evidence which is properly before this court on appeal. The creditor appellant, the Higher Education Assistance Foundation ("HEAF"), has filed a motion to supplement the designation of the record on appeal to include the transcript of the Rule 2004 examination of the debtor. Stewart opposes HEAF's motion, and has filed a motion to disregard or to strike references to the Rule 2004 transcript in HEAF's brief.

After reviewing the parties' arguments, the relevant authorities and the references in the currently-designated record to the Rule 2004 transcript, the court finds that HEAF's motion to supplement the designation of the record should be denied. Although HEAF's attorney made reference to the Rule 2004 transcript during the trial of creditors' objections to confirmation of Stewart's Chapter 13 plan, the transcript itself was not admitted into evidence in that proceeding. Nor does the Rule 2004 transcript appear to have been used to impeach Stewart's testimony. Thus, the court declines to supplement the record to include the entire transcript of Stewart's Rule 2004 debtor's examination. *See* Fed. R.Bankr.P. 7032; Fed.R.Civ.P. 32. The court further finds that Stewart's motion to strike references to the Rule 2004 tran-script in HEAF's brief should be granted to the extent that HEAF's brief refers to portions of the Rule 2004 transcript which do not appear on the record of the debtor's testimony during the March 16, 1989 hearing on the objections to confirmation of Stewart's plan.

*Bankruptcy Court's Findings*

This court finds that the following findings of fact by the bankruptcy court are not clearly erroneous and will be considered by this court as true:

Findings of Fact: This thirty-one year old debtor obtained her undergraduate degree in five years in Pennsylvania and her law degree in four years from Washburn University Law School in Topeka, Kansas, financing both her degrees in part with student loans. She graduated from law school in 1987 with a class rank of 182 in a class of 184. She was subsequently unable to obtain employment practicing law in either the public or the private sector, and so opened an office for the private practice of law in her home in Overbrook, Kansas. In November of 1988, she was elected county attorney of Osage County, Kansas, after the leading candidate was required to withdraw from the race because he did not pass the bar examination. This is a part-time position, so she continues to conduct her private practice as well.

During law school, the debtor was on scholastic probation from the end of her first semester until she graduated. Nevertheless, she preserved hopes of obtaining a $25,000.00 to $30,000.00 per year job upon graduation. During her last year of law school, she discovered she has a form of narcolepsy, for which she now takes medication. That same year, she became pregnant and ultimately gave birth to premature twins in December 1987. They weighed two pounds at birth and spent several weeks in neonatal care. The debtor received public assistance during this time period, until June 1988.

In 1987, three to four months after her admission to the bar in September, the debtor's private practice grossed $595.00

and netted $130.00. In 1988, her business grossed $12,640.14 and netted $6,373.42. She began receiving her county attorney salary of slightly more than $1000.00 per month in early 1989 and projects that she will net about $500 per month from her private practice. Her husband, a forty-four year old dairy farmer, earns $5.00 per hour working at a lumber company. In December 1987, she returned a car to Ford but Ford Motor Credit, one of the unsecured claimants in this case, still asserts a deficiency of $5,163.58 is due. The debtor currently drives a 1966 Dodge Polara which she must keep running to carry her around the county as required by her present job. She also must pay for a babysitter or other day care while she and her husband are at work. She has in the past purchased her clothing from the D.A.V. or Salvation Army or at garage sales. The debtor has secured debt of about $1,000.00 and unsecured of about $63,-000,00, about $48,500.00 of that being student loans. Her undergraduate student loans totalled in excess of $10,-000.00 and she added another $36,000.00 during law school. Payment on the undergraduate loans was deferred while she was in law school, and the law school loans became due about the time she filed this chapter 13. The bulk of the student loans carry interest rates of 7 to 12%; one now amounting to about $1,300.00 carries a rate of 3 to 4%. The debtor would have to pay about $350.00 per month just to pay the interest on these loans. She testified the actual payments due on them are $750.00 per month. She has assets worth about $2,300.00.

The debtor proposes to pay creditors over 60 months at $90.00 per month, with student loan creditors sharing on a proportionate basis with the other unsecured creditors . . . .

*In re Robert Lee Atchley, et. al.,* slip op. at 15–17 (Bankr.D.Kan., *unpublished,* June 6, 1989).

The appealing creditor, HEAF, guarantor of $34,500 of student loans obtained by the debtor to partially finance her legal education, has emphasized the following facts on appeal. The debtor, Cheryl Stewart, filed her Chapter 13 bankruptcy on May 23, 1988. At the time of filing her schedules, debtor had no priority unsecured debt, two secured creditors with total claims of $1,020 and $57,836.92 of general unsecured debt. Of the $57,836.92, approximately $46,000 involved student loans, or approximately 80%.

At the time of filing bankruptcy, Stewart's family unit of six had a total net monthly income of $1,494.70, and total monthly expenses (including plan payments) of $1,435.00. After Stewart's election to the county attorney position, she filed amended schedules estimated to be effective March 1, 1989 for a family unit of four, indicating a total net monthly income of $2,271.93 and total monthly expenses (excluding plan payments) of $2,181.00. Two of her husband's children had moved in with their natural mother. Of the $2,181.00 in estimated expenses, $100.00 was for child support for a stepdaughter. The amended schedule also showed expenses of $100 for "other support," which, upon examination, Stewart said she thought might be owing on child support. Thus, Stewart's net monthly income increased by $777.23 and her monthly expenses increased by $746.00 (although her family unit size had decreased to four persons) after she received the county attorney job and filed amended schedules. Her plan payment increased from $50.00 to $90.00 per month.

Stewart's student loan creditors, including HEAF, objected to the confirmation of Stewart's Chapter 13 plan on the grounds that her proposed plan showed a lack of good faith and that not all of Stewart's disposable income was being committed to the plan. An evidentiary hearing was held regarding those issues on March 16, 1989.

*Bankruptcy Court's Decision Confirming Stewart's Plan*

Stewart's student loan creditors, primarily HEAF, objected to her Chapter 13 plan as proposed in bad faith. Specifically, HEAF argued that the following factors

weighed against finding that Stewart's plan was proposed in good faith:

(1) Stewart's student loan obligations would be nondischargeable in a Chapter 7 proceeding;

(2) the student loan debt was to be paid on a parity with other unsecured debt;

(3) Stewart's proposed payments under the plan were de minimus, representing only a 1–2% payment of the principal;

(4) the initial plan was limited to 36–months and should be required to run 60 months;

(5) Stewart had made little, if any, attempt at repayment of the student loans;

(6) Stewart's schedule, including the listed income and expenses, was of questionable accuracy, particularly in that her estimated expenses increased $770 to offset a corresponding increase in income after she obtained the county attorney position;

(7) Stewart's student loan debt constituted the majority of her debt; and

(8) Stewart was not applying all excess disposable income to plan payments.

In its judgment on decision dated June 6, 1989, the bankruptcy court held that Stewart had filed her plan in good faith and that all disposable income was being committed to the plan. In reaching its decision, the court rejected HEAF's arguments that student loan debtors should first file a Chapter 7 to discharge other unsecured debt or that student loan debt should receive a greater percentage of payments made than other unsecured creditors in a Chapter 13. The court did, however, find that "the nondischargeability of student loan debt constitutes 'cause' for extending a plan under Section 1322(c)." Thus, the court found that Stewart should continue to make payments on her student loan debt under the plan for two additional years, extending the proposed plan from 36 to 60 months.

The court also stated the following conclusions of law, pursuant to Fed.R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a):

> Conclusion of Law: This objection [from Stewart's student loan creditors that her plan was filed in bad faith] seems to have as its real basis the fact that the debtor is an attorney. But for her somewhat fortuitous election as county attorney, she would have no ability to attempt any repayment to unsecured creditors in this case. At a time when she was making $1,000.00 or less per month in gross income, the student loan repayment was $750.00 per month. She could not even service the mounting interest on this debt, much less pay principal and interest on it along with other obligations.
>
> Here, the government continued to finance the education of a person who was on scholastic probation during the time she borrowed over 75% of her student loans. During that time, her chances of any repayment should have appeared bleak at best. This is not to say that such a person cannot be successful or should be denied assistance, but surely when the chances of repayment are or should be known at the outset to be minimal, HEAF and other student loan creditors should hesitate to assert bad faith when repayment cannot be made. When the debtor desires to pay her indebtedness to all creditors and has indicated she would agree to a five-year payment plan, she does not now nor in the foreseeable future will she have the ability to pay them in full. The Court perceives no malevolent intent in her plan and no abuse of the Bankruptcy Code. As in all these cases, the debtor will report her circumstances to the trustee during the term of the plan, and if her circumstances improve, her creditors will benefit.

*In re Atchley, et. al.,* slip op. at 18–19 (Bankr.D.Kan., *unpublished,* June 6, 1989).

*Did the bankruptcy court err in finding good faith?*

The first issue before this court on appeal is whether the bankruptcy court erred in finding that the debtor filed her plan in good faith, as required by 11 U.S.C. § 1325(a)(3). The Bankruptcy Code provides that the bankruptcy court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). As

discussed by this court in *In re Nittler*, 67 B.R. 217 (D.Kan.1986), "[t]he good faith requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13." *Id.* at 221 (quoting *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431–32 (6th Cir. 1982).

■ The purpose of Chapter 13 is "to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." *In re Yavarkovsky*, 23 B.R. 756, 758 (S.D.N.Y.1982) (quoting House Report No. 95–595, 95th Cong., 2d Sess. 118, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6079). The purpose of a Chapter 13 then is to enable debtors to pay debts which have become "too burdensome to meet without the help of the bankruptcy laws," not to allow a debtor to discharge a debt which would not be dischargeable under Chapter 7 without substantial payment by the debtor to the creditor. *In re Jonson*, 17 B.R. 78, 79 (Bankr.S.D.Ind.1981) (citations omitted). A Connecticut bankruptcy court emphasized the distinction between a Chapter 13 and a Chapter 7 bankruptcy as follows:

> [T]he drafters [of the Code] did not intend the liberal provisions of Chapter 13 to be used as a disguised Chapter 7 Liquidation. The drafters intended debtors to deal fairly and justly with their creditors. As a reward for such dealing, debtors were given the 'super' discharge provided for in 1328(a) by which all debts, except alimony and child support obligations and certain long-term debts are discharged upon successful completion of the plan.

*In re Murallo*, 4 B.R. 666, 668 (Bankr.D. Conn.1980).

Congress perceived the benefits of a Chapter 13 as protecting a debtor's credit standing "far better than a straight bankruptcy" and as satisfying "many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident; their losses will be significantly less than if their debtors opt for straight bankruptcy." *Yavarkovsky*, 23 B.R. at 758. The goals of the Chapter 13 bankruptcy have been summarized as rehabilitation and repayment. *In re Kull*, 12 B.R. 654, 659 (S.D.Ga.1981)., *aff'd, In re Kitchens*, 702 F.2d 885 (11th Cir.1983).

In *Nittler*, this court emphasized that a broad scope of inquiry concerning the debtor's pre- and post-filing conduct was appropriate in determining whether the plan was proposed in good faith. In determining whether the good faith requirement of section 1325 was met, the bankruptcy court was also admonished to apply the factors of *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983), and to set out its consideration of each applicable factor. *Nittler*, 67 B.R. at 227.

In *Flygare*, the Tenth Circuit enumerated eleven separate factors relevant to a determination of good faith:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

**1004**

(11) the burden which the plan's administration would place upon the trustee.

*Flygare,* 709 F.2d at 1347–48. The *Flygare* court also noted that this list of factors is not intended to be exhaustive, and that the weight given each factor will vary in each case. *Id.* at 1348. According to the Tenth Circuit's opinion in *Flygare,* the principal issue facing the bankruptcy court in deciding whether to confirm a plan as in compliance with section 1325(a)(3) is "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *Id.* at 1347 (quoting *In re Estus,* 695 F.2d 311, 316 (8th Cir.1982)).

In confirming Stewart's plan, the bankruptcy court expressly stated that it "perceived no malevolent intent in her plan and no abuse of the Bankruptcy Code." The bankruptcy court also relied upon Stewart's inability to pay her student loan creditors more than was proposed under the plan (best efforts criterion). In its "general conclusions" section, slip op. at 3–6, the bankruptcy court also found that discrimination between student loan debt and other unsecured debt should not be allowed, that the *de minimus* nature of the proposed payments under the plan (i.e., approximately 2% of the principal) should not alone bar confirmation, and that the duration of the plan should be extended to sixty months.

▪ In reviewing the bankruptcy court's decision on the good faith issue, this court finds that the bankruptcy court failed to explicitly address and make additional findings of fact regarding the creditors' objections in relation to the fourth *Flygare* factor, i.e., the accuracy of debtor's statements of debts, etc. The court finds that this failure to specifically address the creditors' objections on this point is clearly erroneous in the present case, in light of debtor's sizable increase in expenses ($746.00, notwithstanding the departure of two members of the household) to directly offset her $777.23 net increase in income upon attaining the county attorney's position. Such findings are clearly relevant to Stewart's good faith in filing the proposed plan. The court thus finds that this case should be remanded to the bankruptcy court for spe-

cific findings relative to this issue with regard to both the good faith determination and the question of whether all of Stewart's disposable income is being devoted to the plan. Although this court does not purport to find Stewart's plan in bad faith, the court finds that it was error for the bankruptcy court to fail to address the appellant's objections below.

▪ The court further finds that additional scrutiny of the *de minimus* nature of Stewart's proposed payment to her student loan creditors is warranted. While the bankruptcy court was correct in finding that this factor alone, in the nature of a per se rule, should not bar confirmation, *see Flygare,* 709 F.2d at 1348, this court reaffirms its position in *Nittler* that this factor is entitled to great weight in determining whether a debtor's plan is proposed in good faith. In *Flygare,* the Tenth Circuit generally endorsed the following analysis, quoting the Eighth Circuit's opinion in *In re Estus,* 695 F.2d 311, 316–17 (8th Cir.1982):

> Certainly an important factor the courts must weigh in their analysis is the percentage of payment to unsecured creditors which the plan proposes. A low percentage proposal should cause the courts to look askance at the plan since repayment is one purpose of a Chapter 13 plan....

709 F.2d at 1347. The *Estus* opinion was also quoted by this court in its decision in *In re Nittler:*

> As noted, repayment to unsecured creditors, although not a requirement for confirmation of every Chapter 13 plan, was one intended purpose of Chapter 13's enactment. Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting to honestly repay his debts....

67 B.R. at 225 (quoting *Estus,* 695 F.2d at 316).

▪ In the student loan context, the size of the proposed repayment is particularly critical to a good faith determination for a number of reasons. First, in addition to the "tremendous advantage of a Chapter 13 bankruptcy" generally received by the

debtor in terms of their credit standing, avoiding social stigma, and retaining assets, *see Yavarkovsky,* 23 B.R. at 758–59, the student loan debtor is able in a Chapter 13 to discharge what would otherwise, save for rare exceptions, be nondischargeable student loan debt. *See* 11 U.S.C. § 1328(a). *Cf.* 11 U.S.C. § 523(a)(8). The debtor is of course able to retain the acquired asset—i.e., a college or, in the case, college and professional school education—which will presumptively continue to benefit the debtor throughout her lifetime.

Second, in *Nittler,* this court further expressed that a low repayment proposal should be given great weight "because of its inherent unfairness to the unsecured creditor." 67 B.R. at 226. This is particularly true in the student loan context, where Congress, not the individual lender, establishes the criteria for eligibility. As the Sixth Circuit stated it in *In re Doersam,* 849 F.2d 237, 240 (6th Cir.1988) (quoting *State Educ. Assistance Auth. v. Johnson,* 43 B.R. 1016, 1021 (Bankr.E.D.Va. 1984)):

> Unlike most commercial loans which are granted only upon a showing of creditworthiness and ability to make repayment, guaranteed student loans, on the other hand, are granted only upon a debtor establishing need. Unlike most loans, guaranteed student loans do not require a borrower to commence repayment until the borrower has completed his or her education.

Although the court recognizes, as did the bankruptcy court, that student loan lending criteria may lead to results such as those in Stewart's case where a debtor has clearly borrowed far more money than is prudent in terms of repayment, the student loan creditor is entitled to at least as much, if not more, protection than any other unsecured creditor because HEAF, and ultimately the taxpayer, cannot protect itself in this situation. *See State Educ. Assistance Auth.,* 43 B.R. at 1021–22.

Third, although courts have held that debtors should not be faulted for taking advantage of available statutory provisions, courts have held that confirmation should be denied when the primary purpose of a Chapter 13 plan is to discharge otherwise nondischargeable student debt. In *In re Makarchuk,* 76 B.R. 919 (Bankr.N.D.N. Y.1987), for example, where student loan debt constituted 100% of the debtor's debt and only 48% repayment was proposed under the plan, the court found that the magnitude of the student loan debt in relation to the debtor's total debt and the low percentage of repayment were factors weighing considerably against confirmation. As a generalization, courts have denied confirmation where student loan debt comprises more than 50% of the total debt, finding that the primary purpose of Chapter 13 plans in such an instance was to discharge otherwise nondischargeable student loan debt. *See In re Williams,* 42 B.R. 474 (Bankr.E.D.Ark.1984) (denying confirmation where student loan debt comprised 82% of the debt and the plan proposed 37% repayment); *In re Johnson,* 36 B.R. 67 (Bankr. S.D.Ill.1984) (confirmation denied: student loans were 84% of debt, 10% repayment proposed); *In re Nkanang,* 44 B.R. 955 (Bankr.N.D.Ga.1984) (confirmation denied: student loans were 50% of the debt, 1% repayment proposed); *In re Dalby,* 38 B.R. 107 (Bankr.D.Ut.1984) (confirmation denied: student loans were 96% of the debt, 30% repayment proposed); *In re Gaston,* 25 B.R. 571 (Bankr.S.D.Ohio 1982) (confirmation denied: student loans were more than 50% of the debt, 4% repayment proposed); *In re Jonson,* 17 B.R. 78 (Bankr.S.D.Ind.1981) (confirmation denied: student loans were 100% of the debt, 39% repayment proposed); *In re Ponanski,* 11 B.R. 661 (Bankr.D.R.I.1981) (confirmation denied: student loans were more than 50% of the debt, 22% repayment proposed); *In re Smith,* 8 B.R. 543 (Bankr.D.Ut.1981) (confirmation denied: student loans were 66% of the debt, 16% repayment proposed). *See also In re Newberry,* 84 B.R. 681 (Bankr.E.D.Cal.1988) (confirmation denied: student loans constituted 66% of debt, 25% repayment proposed).

In the present case, Stewart's approximately $46,000 in student loans constitutes 80% of her total unsecured debt, and she proposes to repay only approximately

2–4% of the principal. Under these circumstances, the court finds it was error not to make specific findings regarding whether Stewart's primary purpose in filing a Chapter 13 was to obtain discharge of student loan debt. The court further finds that merely extending the proposed plan for an additional two years does not, in itself, mean that a plan meets the good faith requirement. All of the relevant factors should be addressed by the bankruptcy court.

While the court recognizes the difficult dilemma faced by HEAF, student loan debtors filing Chapter 13 plans, and the bankruptcy court's difficult role in balancing these competing interests in deciding whether to confirm a proposed plan, the good faith requirement remains the fulcrum in assuring that a debtor receives a "fresh start" but not a "head start" under the Bankruptcy Code. The court is also concerned that the memorandum of decision below implies that the court's decision to confirm was based on its perception that all disposable income was being devoted to the plan and that the debtor simply could not afford greater repayment to HEAF. Good faith, however, requires something more than a debtor's "best efforts." *See In re Warren*, 89 B.R. 87, 94–95 (9th Cir. BAP 1988). On remand, the bankruptcy court is instructed to give greater weight to the fact that student loan debt constitutes 80% of Stewart's total unsecured debt and to the *de minimus* nature of Stewart's proposed repayment in deciding whether her plan should be confirmed under the good faith requirement of 11 U.S.C. § 1325(a)(3). *See In re Porter*, 102 B.R. 773, 777 (9th Cir. BAP 1989) ("[a] bankruptcy court should pay particular scrutiny to the debtor's good faith when the plan proposes nominal repayment and a nondischargeable debt is present").

This court finds that the order of confirmation must be vacated and the case remanded for reconsideration of both the good faith and the disposable income issues. This decision is based on the policy considerations discussed in this opinion and the failure of the bankruptcy court to make specific findings addressing appellant's objections with regard to the accuracy of debtor's schedules, findings which are relevant to both the good faith and the disposable income determinations, and the bankruptcy court's failure to give sufficient weight to the *de minimus* nature of the payments proposed in Stewart's plan in making its good faith determination.

IT IS BY THE COURT THEREFORE ORDERED that the bankruptcy court's confirmation of appellee's Chapter 13 bankruptcy plan is vacated and the matter is remanded to the bankruptcy court for reconsideration consistent with this memorandum and order.