In re Michelle THOMPSON, a/k/a Michelle E. Thompson, Debtor.

COLORADO STUDENT OBLIGATION BOND AUTHORITY, Appellant,

v.

Michelle E. THOMPSON, Appellee.

No. 89–K–881.

Bankruptcy No. 88 B 17804 C.

United States District Court, D. Colorado.

July 10, 1990.

Sonja Ann Becker, Denver, Colo., for Thompson.

Barry Meinster, Brad Viar, Meinster & Brown, Denver, Colo., for CSOBA.

Sally J. Zeman, Denver, Colo., trustee.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether Michelle E. Thompson's plan for reorganization under Chapter 13 of the Bankruptcy Code was proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). The Colorado Student Obligation Bond Authority (CSOBA) argues that the bankruptcy court erred in confirming the plan because it was designed solely to avoid repayment of Thompson's student loans. CSOBA contends that, had the bankruptcy court considered all the factors required under *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983), it would have concluded that Thompson's plan was not filed in good faith. I affirm.

### I. *Facts.*

Thompson filed her petition for relief under Chapter 13 of the Bankruptcy Code on January 4, 1989. At the time her petition was filed, Thompson was employed as an office administrator at U.S. West Direct. Her bi-weekly takehome pay was $408.58. Thompson's largest creditor was CSOBA, the assignee of a $10,465.87 student loan. Thompson's unsecured debts also included another student loan, federal and state taxes, and credit card charges. Student loans comprised approximately 70 percent of her total indebtedness.

On February 2, 1989, Thompson submitted her Chapter 13 plan for confirmation. Under the plan, Thompson was to pay $77.00 per month to her creditors over a three-year period. This amount represented Thompson's entire disposable income after living expenses, as detailed in her budget filed with the court. Under this plan, unsecured creditors would receive 2.18 percent of their claims.

On March 1, 1989, CSOBA filed its objection and request for hearing on the confirmation of Thompson's plan. A hearing was held on December 27, 1989. At the conclusion of the hearing, the bankruptcy court denied CSOBA's objection and confirmed the plan. CSOBA now appeals.

### II. *Merits.*

Under § 1325(a)(3) of the Code, the court must confirm a plan under Chapter 13 if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The meaning of "good faith" is not defined in the Code, and had been the subject of controversy among the bankruptcy courts. In 1983, following the lead of other circuits, the Tenth Circuit adopted a "totality of the circumstances" test, whereby good faith was to be judged with reference to the following eleven factors:

"(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee."

*Flygare v. Boulden,* 709 F.2d 1344, 1347–48 (10th Cir.1983) (quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir.1982)). The *Flygare* court further noted that the above list "is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case," *id.* at 1348, with the principal issue being " 'whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13.' " *Id.* at 1347 (quoting *In re Estus,* 695 F.2d at 316).

■ With the Bankruptcy Amendments and Federal Judgeship Act of 1984, § 1325 of the Bankruptcy Code was amended and

§ 1325(b) was added. Under this section, the bankruptcy court is authorized to confirm a plan in which all of the debtor's disposable income for three years is applied to make payments under the plan. *See* 11 U.S.C. § 1325(b)(1)(B); *Handeen v. LeMaire (In re LeMaire),* 898 F.2d 1346, 1349 (8th Cir.1990). Disposable income is further defined in § 1325(b)(2). As noted by a number of authorities, the inclusion of the ability-to-pay test in § 1325(b), coupled with other amendments to the Code, *e.g.,* 11 U.S.C. § 109(g) (addressing repetitive filings), encompasses many of the . *Flygare* factors, indicating that they are no longer relevant to the good faith analysis under § 1325(a)(3). *See In re LeMaire,* 898 F.2d at 1349; *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987); *In re March,* 83 B.R. 270, 274–75 (Bankr.E.D.Pa.1988); 5 *Collier on Bankruptcy* ¶ 1325.08 at 1325–47 (L. King 15th ed. 1990). Thus, the focus under § 1325(a)(3) has been narrowed to "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Zellner,* 827 F.2d at 1227; *see also LeMaire,* 898 F.2d 1346. "Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith." *Collier on Bankruptcy, supra,* ¶ 1324.04[03] at 1325–18.

■ Turning to CSOBA's arguments in this appeal, its primary contention is that the bankruptcy court did not adequately consider certain *Flygare* factors when it confirmed Thompson's plan. Specifically, CSOBA criticizes the bankruptcy court for failing to consider adequately the *Flygare* factors relating to Thompson's employment history, the term of the plan, the lack of special circumstances, the nondischargeability of the student loans, and her motivation in seeking Chapter 13 relief.[1] As the above discussion makes clear, the ability-to-

---

**1.** CSOBA characterizes this issue as a purely legal one, arguably subject to *de novo* review. While it is true that the bankruptcy court's failure to consider fully the factors relevant to good faith is legal error, *see Flygare,* 709 F.2d at 1348 (remanding for full consideration of all factors),

as discussed below, the court did address these factors. CSOBA's argument is really directed toward the way the court analyzed and weighed these factors; therefore, its ruling must be upheld unless clearly erroneous. *See LeMaire,* 898 F.2d at 1349 (findings as to debtor's motivation

pay test of § 1325(b) eliminates the need to reconsider such factors as Thompson's employment history, the term of the plan, or any special circumstances affecting her financial condition. Thompson's plan meets the criteria of § 1325(b); she will pay all of her disposable income into the plan for three years.[2]

CSOBA's argument that the bankruptcy court did not fully consider Thompson's motivation in filing the plan, given that the majority of her debt consists of student loans which are nondischargeable under Chapter 7, however, remains material to the good faith analysis under the current statute.

> Although *Zellner* modified the good faith determination in response to the new section 1325(b), it is recognized that *Zellner* preserved the "totality of circumstances" approach with respect to *Estus* factors not addressed by the legislative amendments. Thus, in considering whether [the debtor] proposed his plan in good faith, factors such as the type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief are particularly relevant.

*In re LeMaire*, 898 F.2d at 1349 (citation omitted). In its findings of fact and conclusions of law entered orally at the close of the hearing, the bankruptcy court addressed in depth Thompson's motivation in seeking Chapter 13 relief. It found that she had been sincere in her efforts in repaying her student loan obligations, given her low takehome pay and the weak Denver job market. *Id.* at 23–25. The court concluded that,

> considering all the factors, I find that one reason that [Thompson] sought [Chapter] 13 [relief] is that there are taxes that have to be paid and that could

have been her reason for filing the Chapter 13 as much as to take care of the student loans.

> So under all the circumstances of the case, I find that the allegations of bad faith have not been sustained and with the changes that I have outlined, I will go ahead and confirm the plan....

*Id.* at 25. The court stated that it was persuaded at least in part by Thompson's candor and honesty while testifying at the hearing. *See id.* at 22, 24. .

I conclude the bankruptcy court's finding of good faith cannot be set aside as clearly erroneous. Although as CSOBA notes, there is authority that a Chapter 13 plan providing for de minimis payments on unsecured debt comprised almost entirely of student loans indicates that the plan was not proposed for a proper purpose, *see, e.g., In re Stewart*, 109 B.R. 998, 1005 (D.Kan. 1990) (citing cases), I question the continued vitality of these formula-based cases after the enactment of § 1325(b). In addition, in many instances, there were other indices of the debtor's bad faith, such as the failure to pay all disposable income into the plan, *see In re Dalby*, 38 B.R. 107, 110 (Bankr.D.Utah 1984) (paying only 40 percent of disposable income into plan), unrealistic or dishonest proposed budgets, *see Ohio Student Loan Comm'n v. Doersam (In re Doersam)*, 849 F.2d 237, 240 (6th Cir.1988); *In re Stewart*, 109 B.R. at 1001, or the failure to make any effort in repaying the loans, *see In re Doersam*, 849 F.2d at 240. Here, Thompson is paying all of her disposable income into the plan and must account for any future increases in her salary. Her budget is conservative, and the bankruptcy court suggested that she may have underestimated her food expense. While Thompson made at most one payment only on her student loan and received a deferral, she attempted to get her

---

in filing plan reviewed under clearly erroneous standard); *Washington Student Loan Guar. Ass'n v. Porter (In re Porter)*, 102 B.R. 773, 775 (Bankr. 9th Cir.1989) (same).

**2.** Some courts have continued to apply the factors listed in *Flygare* and other cases in examining whether the debtor is unfairly manipulating the Code by filing a Chapter 13 plan. *See Collier on Bankruptcy, supra,* ¶ 1325.04[03] at

1325–18 n. 45. Even assuming that all of the *Flygare* factors are relevant to whether the debtor "has unfairly manipulated the Bankruptcy Code," the record indicates that the bankruptcy court went through a laundry list of factors relevant to this case and concluded that none warranted a finding of bad faith. Its conclusion under a strict *Flygare* analysis was not clearly erroneous.

finances in order by obtaining counseling and tried to set a budget (albeit an unrealistic one) to make payments on her debts. There is no allegation that Thompson misstated her debts or expenses or otherwise mislead the court.

"The attempt by a debtor to discharge, through a Chapter 13 plan, a debt that would not be dischargeable in a Chapter 7 liquidation does not, in itself, taint the plan with bad faith," *In re Lawson,* 93 B.R. 979, 986 (Bankr.N.D.Ill.1988); something more is required. This is true even though a large percentage of the debtor's unsecured obligations are student loans and only a small portion of the loan balance will be paid through the plan. *See, e.g., Holiday v. Tennessee Student Assistance Corp. (In re Holiday),* 75 B.R. 265 (M.D.Tenn.1986); *In re Falquist,* 85 B.R. 566 (Bankr.D.Or. 1988); *In re Adamu,* 82 B.R. 128 (Bankr.D. Or.1988). Thus, "[i]f this court were to adopt some percentage test to be used in determining bad faith, it would be a completely arbitrary test not provided for by Congress," *In re Falquist,* 85 B.R. at 567, especially in light of the enactment of § 1325(b). Therefore, IT IS ORDERED that the bankruptcy court's finding that Thompson's plan was filed in good faith is affirmed.