**In re Denise Jo 'Lan CASTONGUAY, Debtor.**

**Bankruptcy No. 89-20940-13.**

United States Bankruptcy Court,
D. Kansas.

Sept. 24, 1990.

James C. Thompson, Prairie Village, Kan., for debtor.

Nancy L. Ulrich, Asst. Atty. Gen., Topeka, Kan., for Creditor PSU.

Thomas L. Griswold, of Payne & Jones, Chartered, Overland Park, Kan., for creditor HEAF.

Lloyd C. Swartz, Topeka, Kan., Standing Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on for hearing before the Court on April 11, 1990, pursuant to the Joint Objection of Pittsburg State University and Higher Education Assistance Foundation to Confirmation of Debtor's Amended Plan. The creditor Pittsburg State University appeared by and through its attorney, Nancy L. Ulrich, Assistant Attorney General. The creditor Higher Education Assistance Foundation appeared by and through its attorney, Thomas L. Griswold of the law firm of Payne & Jones, Chartered. The debtor, Denise Jo 'Lan Castonguay appeared in person and through her attorney, James C. Thompson. Lloyd C. Swartz appeared as the Chapter 13 Standing Trustee.

## FINDINGS OF FACT

Based upon the pleadings and the record, this Court finds as follows:

1. That in 1983 debtor, Denise Jo 'Lan Castonguay (hereinafter "debtor") enrolled in Pittsburg State University majoring in finance.

2. That debtor, while attending Pittsburg State University, borrowed approximately $2,300 at 5% interest through the school. The University filed a timely proof of claim in the amount of $2,099.06.

3. That debtor also borrowed approximately $12,500 in guaranteed student loans from the Higher Education Assistance Foundation. The amount now owing on that debt, according to the amended proof of claim, is $14,545.66.

4. That in 1987, the debtor left Pittsburg State University, six hours shy of her degree in finance.

5. That after leaving school the debtor was employed in the brokerage industry by Shearson, Lehman and Hutton and B.C. Christopher.

6. That on June 15, 1989 the debtor filed her petition under Chapter 13 of Title 11, United States Code.

7. That on September 14, 1989, the debtor filed her Amended Chapter 13 Plan with this Court because she had left B.C. Christopher and was then employed by E.J.

Labels. She also lowered her expenses under the amended plan.

8. That on October 3, 1989, creditors, Pittsburg State University (hereinafter "PSU") and Higher Education Assistance Foundation (hereinafter "HEAF") filed their Joint Objection to Confirmation of Debtor's Amended Plan.

9. That on April 11, 1990 a hearing was held on the creditors' joint objection to the confirmation of the debtor's amended plan, and after hearing the testimony and the arguments of counsel this Court took the matter under advisement.

### CONCLUSIONS OF LAW

Chapter 13 was designed to "enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." *Matter of Yavarkovsky,* 23 B.R. 756, 758 (D.C.S.D.N.Y.1982) (quoting, House Report No. 95–595, 95th Cong., 2d Sess. (1978) at 118, U.S.Code Cong. & Admin.News, pp. 5787, 6079).

Chapter 13 offers many benefits to debtors not found in the other chapters of Title 11:

> Chapter 13 ... protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident; their losses will be significantly less than if their debtors opt for straight bankruptcy.

*Id.* at 759 (quoting, House Report No. 95–595, 95th Cong., 2d Sess. (1978) at 118, U.S.Code Cong. & Admin.News at p. 6079.)

Under 11 U.S.C. § 1325(a)(3) the bankruptcy court shall confirm a plan if "the plan has been proposed in good faith and not by means forbidden by law." "Good faith" has not been defined by the Bankruptcy Code nor is it discussed in the Code's legislative history. Courts have looked to the structure and general purpose of Chapter 13 to define good faith.

*Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 431–432 (6th Cir.1982). Other courts have found that the good faith requirement "contemplates a broad judicial inquiry into the conduct and state of mind of a debtor, with reference to the proposal of the plan." *Matter of Yavarkovsky,* 23 B.R. 756, 759 (D.C.S.D.N.Y.1982).

The Tenth Circuit has also considered the issue of good faith in the context of a Chapter 13 plan. *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983) (hereinafter *"Flygare"*). In *Flygare,* the Tenth Circuit looked to whether "the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *Id.* at 1347 (quoting *In re Estus,* 695 F.2d 311, 316 (8th Cir.1982)). In order to ascertain whether a particular Chapter 13 plan met the good faith requirement the Tenth Circuit enumerated 11 factors to determine if a Chapter 13 plan was filed in good faith. The Tenth Circuit noted that "this list was not intended to be exhaustive, and that the weight given each factor will vary in each case." *Id.* at 1348.

This Court shall now apply the *Flygare* test to the case at bar, exclusive of numbers 5, 6, 8, 9, and 11, which do not apply in this case.

The first *Flygare* factor is "the amount of the proposed payments and the amount of the debtor's surplus." *Flygare,* at 1347. In the case at bar, the debtor has proposed to make monthly plan payments of $83. This amounts to paying her unsecured creditors ten percent over the terms of the 36 month plan. The debtor's plan proposes a surplus of income of 79 cents each month after the plan payment and her expenses are paid.

The second *Flygare* factor is "the debtor's employment history, ability to earn and likelihood of future increases in income." *Flygare,* at 1347. While at Pittsburg State University, the debtor pursued a degree in financing with the intent of applying the degree in the brokerage industry context. She left Pittsburg State University in 1987, just six hours shy of obtaining her financing degree to work for Shearson, Lehman and Hutton. She was employed there for

18 months until the firm closed down. She then obtained employment with B.C. Christopher. The debtor testified that finding another job in the industry was "easy" because she had worked for Shearson Lehman. After working for B.C. Christopher for two months—during which time her bankruptcy was pending before this Court—the debtor quit her job stating that she was "unhappy in the industry." The debtor further testified that "when she went into finance, [she] thought [she] would go out in the world [and] prepare budgets for people and help people." Tr. at 41. This was not the case. The debtor is now employed at a retail clothing store. This Court is unable to determine, based upon the debtor's history of employment, what this debtor will even be doing next week. She testified that her resume was on file with numerous companies. Further, the debtor's plan makes no reference to any possible future increases in income.[1]

The third *Flygare* factor is "the probable or expected duration of the plan." *Flygare*, at 1347. The debtor in the case at bar has proposed a 36 month plan, the minimum allowed under § 1322(c). According to the 3 year plan, after completion, debtor will have discharged 90% of her indebtedness. Although this factor alone is not enough to show bad faith in filing a plan the Court must consider this in light of the other factors. *In re Williams*, 42 B.R. 474 (Bankr.E.D.Ark.1984) ("[I]f the current monthly payments were made for 60 months instead of the proposed 36, obviously a more meaningful repayment would occur." *Id.* at 476); *In re Todd*, 65 B.R. 249 (Bankr.N.D.Ill.1986) ("[debtor's] plan could be extended to 60 months if he were truly desirous of making a substantial and meaningful payment of his debt to the extent reasonably within his means." *Id.* at 256); *Matter of Hale*, 65 B.R. 893 (Bankr.S. D.Ga.1986) ("[I]t is noteworthy that Debtors have not elected to extend their plan beyond three years as they are permitted to do." *Id.* at 896). This Court notes that the debtor in the case at bar has filed an Application to Extend Plan Payments to 40 months.

The next *Flygare* factor is "the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court." *Flygare*, at 1348. In the case at bar, the debtor proposes to pay ten percent to her unsecured creditors—her only creditors in this bankruptcy proceeding—the remaining 90% owed is to be "forgiven" under her plan. Although this factor alone does not per se bar confirmation of a plan, it does lend great weight in determining whether a plan is proposed in good faith. *In re Stewart*, 109 B.R. 998, 1004 (D.Kan.1990). As the Tenth Circuit stated in *Flygare*, "an important factor the courts must weigh ... is the percentage of payment to the unsecured creditors which the plan proposes. A low percentage proposal should cause the courts to look askance at the plan since repayment is one purpose of a Chapter 13 plan." *Id.* at 1347 (quoting, *In re Estus*, 695 F.2d 311, 316–317 (8th Cir.1982)); *In re Nittler*, 67 B.R. 217 (D.Kan.1986) ("Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting to honestly repay his debts." *Id.* at 225 (quoting, *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982)).

Moreover, when student loans are at issue, as in the case at bar, the amount of repayment is particularly crucial when determining good faith. One reason is that under a Chapter 13 filing a debtor is able to discharge what is otherwise a nondischargeable student loan debt under Chapter 7. *See* § 523(a)(8)(B) (Student loans are nondischargeable unless there is a showing of undue hardship on the debtor.) Further, a student loan creditor is not the ordinary unsecured creditor. Accordingly, as the Honorable Dale E. Saffels found in *In re Stewart*, 109 B.R. 998 (D.Kan.1990), "the student loan creditor is entitled to at least as much, if not more, protection than any

---

**1.** After a plan is confirmed the debtor is required to report any increase to the Chapter 13 Trustee.

other unsecured creditor because HEAF, and ultimately the taxpayer, cannot protect itself in this situation." *Id.* at 1005.

The seventh *Flygare* factor is "the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7." *Flygare,* at 1347. As this Court has previously stated, absent a showing of undue hardship in the Chapter 7 context a student loan debt is nondischargeable.

The tenth *Flygare* factor is the "motivation and sincerity of the debtor in seeking Chapter 13 relief." *Flygare,* at 1348. A number of courts have held that confirmation of a Chapter 13 plan should be denied where the primary purpose of filing a Chapter 13 was to discharge the otherwise nondischargeable student loan debt. *In re Newberry,* 84 B.R. 681 (Bankr.E.D.Cal. 1988); *In re Makarchuk,* 76 B.R. 919, 923 (Bankr.N.D.N.Y.1987); *Matter of Akin,* 54 B.R. 700, 702 (Bankr.D.Neb.1985); *In re Johnson,* 36 B.R. 67 (Bankr.S.D.Ill.1984); *In re Dalby,* 38 B.R. 107 (Bankr.D.Utah 1984).

In the case at bar, debtor's approximately $16,644.72 in student loan debt constitutes 94.8% of her total unsecured debt of $17,566.16. Her remaining unsecured debt consists of credit card claims. The debtor proposes to forgive 90% of the total debt through her plan of only 36 months.

This Court finds that debtor's motivation in filing this petition was to solely discharge her student loans. *In re Williams,* 42 B.R. 474, 475 (Bankr.E.D.Ark.1984).

Based on the foregoing, this Court finds that the debtor's Chapter 13 plan was not proposed in good faith as the debtor's plan as filed is an abuse of the provisions, purpose and spirit of Chapter 13 of the Bankruptcy Code. *Flygare,* at 1347.

IT IS THEREFORE, BY THE COURT, ORDERED That the Joint Objection of Pittsburg State University and Higher Education Assistance Foundation to Confirmation of Debtor's Amended Plan be and the same is hereby SUSTAINED.

This Memorandum Opinion and Order shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.