**In re Victoria Louise Marie DILLON-BADER, Debtor.**

**Bankruptcy No. 90–21257–13.**

United States Bankruptcy Court, D. Kansas.

Sept. 12, 1991.

McDowell, Rice & Smith, Kansas City, Kan., for debtor.

William H. Griffin, Topeka, Kan., Trustee.

Thomas L. Griswold, Overland Park, Kan., for HEAF.

Howard D. Lay, Kansas City, Mo., for Chrysler.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the February 7, 1991 and February 28, 1991 hearings on the Objection of Higher Education Assistance Foundation to Confirmation of Debtor's Plan and the Objection of Chrysler Credit Corporation to Confirmation and Motion for Adequate Protection. The debtor, Victoria Louise Marie Dillon–Bader (hereinafter "debtor") appeared by and through her attorney, James S. Willis. The creditor, Higher Education Assistance Foundation (hereinafter "HEAF") appeared by and through its attorney, Thomas L. Griswold. The creditor, Chrysler Credit Corporation (hereinafter "Chrysler") appeared by and through its attorney, Howard Lay. There were no other appearances.

## FINDINGS OF FACT

Based upon the parties' stipulations, testimony of witnesses, the pleadings and the record, this Court finds as follows:

1. That the debtor graduated in 1987 from Creighton University in Omaha, Nebraska, with a Doctor of Clinical Pharmacy Degree.

2. That in November, 1987, the debtor started her first and present employment with St. Joseph's Health Center as the assistant director for clinical and educational services.

3. That debtor's starting salary was $32,000 and she received a 5% raise in 1988, an 8% raise in 1989 and a 6% raise in 1990.

4. That debtor's income in 1990 was $42,500 or $43,500.

5. That debtor's income for 1991 will be approximately $45,000.

6. That on August 2, 1990, the debtor filed her plan and petition for relief under Chapter 13 of Title 11, United States Code.

7. That at the time of the debtor's filing she owed $22,480.00 in Health Education Assistance Loan (hereinafter "HEAL") debts.

8. That at the time of the debtor's filing she owed HEAF $30,664.49 in student loan debts.

9. That debtor's secured debt is an automobile loan with Chrysler. The amount of the scheduled debt to Chrysler is $9,000 and the Chrysler LeBaron automobile securing this loan was valued at $5,330.

10. That the debtor's proposed plan treats Chrysler as a secured creditor in the amount of $5,330 and an unsecured creditor to the extent of $3,670.

11. That Commercial Federal Mortgage Company (hereinafter "CFMC"), began foreclosure proceedings sometime in 1987 on its mortgage on the debtor's former home in Omaha, Nebraska. The property was eventually auctioned off for $8,000.

12. That the proposed plan provides that the HEAL loans will be repaid in full and the unsecured creditors will be paid 10% of their allowed claims.

13. That debtor's proposed plan provides for monthly payments of $650 and is scheduled to take 60 months to complete.

14. That on November 13, 1990, HEAF filed its Objection to Confirmation of the debtor's plan.

15. That on January 18, 1991 Chrysler filed its Objection to Confirmation and Motion for Adequate Protection.

16. That on February 7 and February 28, 1991, this Court held hearings on the objection to confirmation of the debtor's plan filed by HEAF and on the objection to confirmation and motion for adequate protection filed by Chrysler. After hearing the evidence and the arguments of counsel, this Court took the matter under advise-

ment upon the filing of stipulation of facts and memorandum briefs by the parties. Chrysler chose not to stipulate nor to submit a memorandum brief on their behalf.

## CONCLUSIONS OF LAW

■ HEAF and Chrysler object to the confirmation of the debtor's plan on the basis that the plan is not proposed in good faith. Under 11 U.S.C. § 1325(a)(3) this Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." In determining whether the good faith requirement of § 1325(a)(3) has been met, this Court is to apply the factors of *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983), and to set out its considerations of each applicable factor. *In re Stewart*, 109 B.R. 998, 1004 (D.Kan.1990).

In *Flygare*, the Tenth Circuit enumerated eleven separate factors relevant to a determination of good faith. *Flygare*, 709 F.2d at 1347–48. This list of factors is not intended to be exhaustive, and the weight given each factor will vary with the facts and circumstances of each case. *Id.* at 1348.

■ The first *Flygare* factor focuses on the amount of the proposed payments and the amount of the debtor's surplus. In the student loan context, the size of the proposed repayment is particularly critical to a good faith determination. *In re Stewart*, 109 B.R. 998, 1004 (D.Kan.1990). This is due to the fact that a student loan debtor is able to discharge in Chapter 13 what would otherwise, except for rare exceptions, be nondischargeable student loan debt. *Id.* at 1005. Also, a low repayment proposal should be given great weight because of its inherent unfairness to the unsecured creditor, which is particularly true in the student loan context, where Congress, not the individual lender, establishes the criteria for eligibility. *Id.*

The debtor's monthly plan payment is $650 and the plan proposes to pay the unsecured creditors (other than HEAL) 10% of their claims. Generally, this Court permits confirmation of a plan if the unsecured creditors are to receive 10% repay-

ment. Under the plan, HEAF would receive only $3,783 over five years. The debtor's monthly surplus after payment of her living expenses and Chapter 13 plan payment is $26.02. HEAF argues that although the debtor has received salary raises every year, the plan makes no provisions for future increases in income, which are very likely to occur.

The second factor in *Flygare* focuses on the debtor's employment history, ability to earn and likelihood of future increases in income. Since graduation, the debtor's only employment has been in the position she currently holds at St. Joseph's Health Center. In the three years that she has held the job, the debtor has received annual raises each year. Debtor testified that she was offered a position with a starting salary of $45,000 in the summer of 1987 with St. Marys of The Plains in Lubbock, Texas. She testified that although the income potential was greater outside the Kansas City area, she decided to remain in the area to be near her family.

The third *Flygare* factor looks at the probable or expected duration of the plan. The debtor's plan was extended to run 60 months, the maximum allowed under the Bankruptcy Code.

The fourth *Flygare* factor focuses on the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court. The debtor's plan provides for a claim of CFMC which is secured by a first mortgage on real property owned by the debtor in Nebraska. Although the debtor testified that the property had been foreclosed in 1987, the plan proposes that the debtor will surrender the property to CFMC in full satisfaction of its claim. The plan therefore provides for the debtor to surrender property which the debtor does not own. The plan has not been amended to deal with this apparent inconsistency.

The fifth factor in *Flygare* focuses on the extent of preferential treatment between classes of creditors. The only preferential treatment given to a class of credi-

tors in the debtor's plan is the 100% payment of the HEAL student loans. Because that preferential treatment is mandated by 42 U.S.C. § 294f(g), the plan's provision for payment of the HEAL loans in full is not an improper preference of these debts in this case.

The sixth *Flygare* factor looks to the extent to which secured claims are modified. Chrysler, the only secured creditor, has not complained about the treatment of its claim under the plan.

The seventh *Flygare* factor should be accorded the greatest weight in the present case. This factor focuses on the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7. Debtor's HEAF loans would not be dischargeable in Chapter 7. These HEAF loans make up 54% of the unsecured debt and over 49% of the total debt in this case. Although the HEAL loans make up an additional 40% of the unsecured debt, the Court recognizes that the debtor's plan proposes to pay 100% of the HEAL loan as required by 42 U.S.C. § 294f(g).

In analyzing these percentages, courts have held that confirmation should be denied when the primary purpose of a Chapter 13 plan is to discharge otherwise nondischargeable student debt. *In re Stewart*, 109 B.R. 998, 1005 (D.Kan.1990). As a generalization, courts have denied confirmation where student loan debt comprises more than 50% of the total debt, finding that the primary purpose of Chapter 13 plans in such an instance was to discharge otherwise nondischargeable student loan debt. *Id.* In the present case, student loans make up 94% of the debtor's unsecured debt. Although the debtor is required to pay the full amount of the HEAL loan which makes up 40% of this figure, the debtor testified that the only reason she is paying back her HEAL loans in full is because it is required by law, otherwise she would discharge the HEAL loans along with the HEAF loans. The magnitude of student loan debt in relation to the debtor's total debt and the low percentage of repayment are factors that weigh considerably against confirmation. The Bankruptcy

Court must give great weight to these factors. *Id.* at 1006. This court finds that the primary purpose of this Chapter 13 plan is to discharge otherwise nondischargeable student debts.

The eighth factor in *Flygare* focuses on the existence of special circumstances such as inordinate medical expenses. The only evidence of medical expenses was the debtor's testimony at the February 7, 1991 hearing concerning her husband's enrollment in an alcohol rehabilitation program. The parties appear to be in agreement that the debtor and her daughter are in good physical health and that this factor is not significant in the Court's decision.

The ninth *Flygare* factor addresses the frequency with which the debtor has sought relief under the Bankruptcy Reform Act. This is the first bankruptcy case filed by the debtor.

The tenth factor set out in *Flygare* is also instructive in the present case. That factor focuses on the motivation and sincerity of the debtor in seeking Chapter 13 relief. HEAF argues that the debtor's only motivation in filing was to rid herself of the majority of her student loans. The debtor testified that the mortgage foreclosure action filed by CFMC was the catalyst that drove her to seek financial counseling. However, CFMC began its foreclosure proceedings in 1987 and the debtor testified that she did not contest the proceedings. It is difficult to see how foreclosure proceedings which began in 1987 provoked the debtor to file bankruptcy in 1990. The burden is on the debtor to prove that the principal purpose behind the plan is consistent with the spirit and purpose of Chapter 13, and is not primarily for the discharge of the otherwise nondischargeable student loan debt. *In re Newberry*, 84 B.R. 681, 684 (Bankr.E.D.Cal.1988). This factor focuses on the debtor's motivation and sincerity in seeking Chapter 13 relief. The Court finds that the debtor has not met this burden. In light of the fact that this court had the opportunity to hear and observe the debtor testifying and to judge her credibility, this Court finds that the debtor's primary purpose in filing her

Chapter 13 plan was to discharge otherwise nondischargeable student loan debt. *See Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir.1977).

The eleventh *Flygare* factor looks to the burden which the plan's administration would place upon the trustee. The plan does not appear to place an unusual burden on the trustee.

In light of all these factors, confirmation of the debtor's plan must be denied for lack of good faith.

IT IS THEREFORE, BY THE COURT, ORDERED That the Objection of Higher Education Assistance Foundation to Confirmation of Debtor's Plan be and the same is hereby SUSTAINED.

IT IS FURTHER, BY THE COURT, ORDERED That Chrysler Credit Corporation's Objection to Confirmation be and the same is hereby SUSTAINED.

This Memorandum shall constitute my findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.