

Sunshine, Slott & Sunshine, P.C., New York City, for appellant, Niceville Fisherman's Co-op.

Glass & Howard, P.C., Cole & Deitz, New York City, for appellee-debtor, Ira Yavarkovsky.

**In the Matter of Ira YAVARKOVSKY, Debtor.**

No. 81 Civ. 7746 (PNL).

United States District Court, S. D. New York.

Oct. 8, 1982.

### OPINION AND ORDER

LEVAL, District Judge.

This appeal from a decision of the Bankruptcy Court raises questions of interpretation of the statutory requirement of "good faith" under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301–1330 (Supp. IV 1980). Objectant Niceville Florida Fisherman's Cooperative (hereinafter "Niceville") appeals from Bankruptcy Judge Roy Babitt's confirmation of the debtor-appellee Ira Yavarkovsky's plan under Chapter 13.

In 1978, Congress amended Chapter 13 to make it more accessible and advantageous to individuals seeking the protection of the bankruptcy laws. 1978 Bankruptcy Reform Act, Pub.L. No. 95–598, 92 Stat. 2549 (1978). Eligibility requirements were broadened to include people other than wage earners and the debt ceilings were generally increased. Other changes were made to increase the debtor's flexibility in dealing with his creditors. The requirement of creditor approval was eliminated. Also, debtors were permitted to use income to consummate the plan, thus spreading payments in the future. Certain classes of debts not dischargeable under Chapter 7, such as claims based on fraud, were made dischargeable under Chapter 13. That the new Chapter 13 was conceived for the benefit of debtors is further demonstrated by the fact that, unlike Chapters 7 and 11, a debtor may not be involuntarily placed under its provisions. *See generally In re Scher,* 12 B.R. 258, 7 B.C.D. (CRR) 979, 984–89 (Bkrtcy.S.D.N.Y. 1981).

In order to qualify for its generous benefits, however, debtors must comply with certain statutory conditions. For example, the value of property to be distributed to each unsecured creditor under a Chapter 13 plan must be not less than he would receive under a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). A plan, furthermore, may not be confirmed unless it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The present appeal concerns the meaning and scope of the statutory requirement of good faith. Because I conclude that the Bankruptcy Court applied an erroneously narrow definition of "good faith," and therefore failed to consider pertinent evidence and make findings as to whether the debtor's conduct complied with the good faith requirement, the order of confirmation is vacated and the action is remanded for further proceedings consistent with this opinion.

*Facts*

Niceville's claims against Yavarkovsky were first asserted in litigation in federal court in Alabama. That action alleged that Yavarkovsky had engaged in a scheme to defraud Niceville and other shrimp dealers on the gulf coast by purchasing shrimp for resale without paying the purchase price. Yavarkovsky interposed affirmative defenses and cross-claims basically contending that any frauds had been perpetrated by others for whose conduct he was not answerable.

In October, 1980, during the pendency of the Alabama actions, Yavarkovsky filed his petition under Chapter 13. His actions during the preceding months are of relevant concern to this appeal. In March 1980, Yavarkovsky sold his 51% interest in Neptune Paper Products, Inc., to his mother for $75,-000. This interest was apparently his sole substantial asset. The Trustee expressed the view that the price was not unreasonably low but the Judge made no findings on the issue. T. 3–4. Yavarkovsky's mother paid him the money between April and August, 1980. T. 3.

Shortly after receiving this cash, Yavarkovsky went to Las Vegas. Most of this money disappeared. The trustee was not able to determine what happened to the money. T. 5. There was some indication that Yavarkovsky paid off gambling debts. T. 5. Although Yavarkovsky claims that all of the cash was dissipated in Las Vegas, the trustee could not conclude that he did not in fact pocket much of the cash. T. 5. No findings were made as to the disposition of this cash.

Yavarkovsky's petition, filed in October, 1980, under Chapter 13, listed disputed claims totalling $364,105.28, being those asserted in the Alabama litigation. The only undisputed claim listed in the petition was a purported loan from Neptune, the company he had sold to his mother, in the amount of $9,689.31. His assets were listed as IRA accounts totalling $7,106.49, savings accounts totalling $593.69, an automobile valued at $1,200, household furnishings, a life insurance policy, stock valued at $100, and household cash of $8,250. The automobile, household goods, life insurance and cash (in the maximum exempt amount of $7,900) were claimed as exempt.

. The original plan proposed by Yavarkovsky provided for the repayment only of the Neptune loan. The disputed claims would not have participated.

A number of the Alabama plaintiffs, including Niceville, filed objections. The trustee also filed objections. At a hearing on the plan and the objections, Yavarkovsky consented to have the objectants' claims marked undisputed, thus permitting the objectants to participate in the repayment plan. In addition, Judge Babitt, on his own motion (and with the apparent consent of the debtor), subordinated the loan from Neptune to the other claims. T. 11–12. As thus amended, the plan provided that the objectants would recover 3.98 cents on the dollar over the course of three years. The bankruptcy judge determined that the objectants' claims were, as of the date of filing, the subject of a *bona fide* dispute, with the consequence that Yavarkovsky was not disqualified from the protection of Chapter 13 by the fact that the total claims exceeded $100,000.

One of the objectants' principal contentions was that the plan was not proposed "in good faith." Judge Babitt construed this requirement as a term of art of narrow significance. He made no finding on the murky issues of the adequacy of the sale of Neptune stock to the debtor's mother or his disposition of the proceeds, apparently believing these issues to be irrelevant to the question of "good faith." Apparently believing that a distribution of assets in an amount exceeding what would be available in a Chapter 7 liquidation necessarily satisfied the good faith requirement, Judge Babitt confirmed the plan.

*Discussion*

The bankruptcy court apparently considered the case to be controlled by its holding in *In re Scher,* 12 B.R. 258, 7 B.C.D. (CRR) 979 (Bkrtcy.S.D.N.Y.1981). In *Scher,* Judge Babitt had held that an absence of good faith cannot be inferred merely from the fact that a proposed plan would provide creditors with a relatively small return, so long as it equalled what would be available on liquidation. In the proceedings below, however, Judge Babitt went further and stated "[i]f the Debtor's budget, as I read the statute, accommodates this kind of payment [one equal to liquidation value] I can't say it's want of good faith...." T. 6. Thus, according to Judge Babitt's construction, not only was the small amount of payment insufficient to establish bad faith, but to the contrary the sufficiency of the amount to meet the "liquidation test" conclusively established good faith, with the result that all the abundant evidence of bad faith was rendered irrelevant, or nugatory.

Although I have no quarrel with Judge Babitt's holding in *Scher* that the small size of the payments does not establish bad faith, I can see no basis for his radical extension of that principle below. Although his reasoning is not spelled out in full, he appears to have effectively read the "good faith" requirement out of the statute by making it turn simply on whether the payments provided in the plan equal those that would be made in liquidation.

Apart from the incompatability of this interpretation with the plain and common meaning of the term "good faith," legislative history and commentary seem to suggest a far broader reading than given below.

11 U.S.C. § 1325(a)(3) provides that the bankruptcy court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." The inquiry into good faith is "directed to whether or not there has been an abuse of the provisions, purpose, or spirit of Chapter XIII in the proposal or plan." 10 Collier on Bankruptcy (14th ed. 1978) (referring to the historical predecessor of 11 U.S.C. § 1325(a)(3)). *See also In re Hurd,* 4 B.R. 551, 6 B.C.D. (CRR) 412, 414 (Bkrtcy.W.D. Mich.1980).

The purpose of Chapter 13 is "to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement." House Report

No. 95–595, 95th Cong., 2d Sess. (1978) at 118, U.S.Code Cong. & Admin.News, pp. 5787, 6079 (as quoted in *In re Scher,* 12 B.R. 258, 7 B.C.D. (CRR) at 990). Some indication of Congress' purposes in enacting the chapter can be gleaned from what the House perceived to be the benefits of a Chapter 13 plan:

> ... Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident; their losses will be significantly less than if their debtors opt for straight bankruptcy.

*Id.* at 118, U.S.Code Cong. & Admin.News at p. 6079. These themes were echoed by the Senate: "[Chapter XIII] preserves the debtor's self-esteem by permitting him to pay his debts using his best efforts without incurring undue hardship." 124 Cong.Rec., S. 17403–04 (Oct. 6, 1978) (Senator DeConcini speaking). In his exhaustive survey in *Scher,* Judge Babitt noted that "[g]enerally, ... the courts stressed the conduct of the debtor, and whether the statutory scheme had been subverted." *In re Scher,* 12 B.R. 258, 7 B.C.D. (CRR) at 983 (citing *Collier*).

From the language of the statute, the legislative history and the interpretative commentary and case law, I conclude that the "good faith" requirement contemplates a broad judicial inquiry into the conduct and state of mind of the debtor, with reference to the proposal of the plan. It goes much farther than whether there has been technical compliance with statutory obligations. Indeed, the words would be superflous if they meant nothing more than what is elsewhere specified. Such inquiry properly enters into all aspects of fair dealing relevant to the proposal of the plan. It looks not only to the lawfulness of the debtor's conduct, but also (the words of the statute being difficult to improve upon) to his good faith in dealing with creditors and their claims.

The record below abounded with indications of connivance, contrivance and of conduct arguably inconsistent with good faith. The bankruptcy judge made plain his distaste for this conduct, but made no findings whether this conduct ran afoul of the good faith requirement. Examples included the sale of the debtor's only substantial asset in a non-arms' length transaction, the subsequent disappearance of the proceeds of that sale without adequate explanation by the debtor, the possibility that the debtor may have gambled using the availability of Chapter 13 to place the results at the sole risk of the creditors, the possibility that preferential allocations may have been made and the possibility that the debtor may have secreted for his own benefit the unaccounted assets. Another pertinent question would be whether the sale of the stock to the debtor's mother was designed to convert as much as possible of the value of the asset into exempt form, to the prejudice of the creditors.

The fact that the events reviewed above occurred prior to the filing of the petition does not make them irrelevant to the issue of whether the plan was proposed in good faith. They would, of course, be particularly relevant if conceived as part of an overall scheme that included the subsequent filing under Chapter 13. Although the purpose of this remand is to require findings on all the relevant evidence and not to direct a verdict, I would at least question whether the unexplained disappearance of proceeds was not, by itself, sufficient basis to preclude a finding of good faith.

The confirmation of the plan is hereby vacated and the matter remanded for further findings.

SO ORDERED.