**In re William H. GRAHAM, Jr. and Nancy L. Graham, Debtors.**

No. 98–3163–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 26, 2001.

Robert Corcoran, Crystal River, FL, for debtors.

Mamie L. Davis, Jacksonville, FL, Standing Chapter 13 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion to Modify Confirmed Plan filed by Mamie L. Davis, the standing Chapter 13 Trustee ("Trustee"), on August 15, 2000. (Doc. 21.) On August 18, 2000, William H. Graham Jr. and Nancy L. Graham ("Debtors") responded with an Objection to Trustee's Motion to Modify Confirmed Plan. (Doc. 23.) On September 27, 2000, the Court held a hearing on Trustee's Motion to Modify and took the matter under advisement. Upon review of the evidence presented and of the arguments and submissions of counsel, the Court finds that Trustee's Motion to Modify should be denied.

## FINDINGS OF FACT

On April 20, 1998, Debtors filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1.) Debtors filed with their Petition all necessary schedules and a proposed Chapter 13 Plan.

On May 11, 1998, Debtor William H. Graham suffered severe injuries in an automobile accident. William H. Graham testified at the September 28, 2000 hearing that he has incurred significant new expenses due to his injuries, and that he will require a full knee replacement surgery, among other costs.

On June 1, 1998, Debtors filed an Addendum to their Schedule B indicating as new personal property a contingent and unliquidated personal injury claim ("the personal injury claim") stemming from the May 11, 1998 accident. (Debtors' Ex. 1.) Debtors valued the personal injury claim at one dollar. On the same day, Debtors filed an Addendum to their Schedule C claiming an exemption in the personal injury claim pursuant to Article X, § 4(a)(2) of the Florida Constitution and § 222.06 of the Florida Statutes. (Debtors' Ex. 2.)

On June 1, 1998 Debtors also filed an Addendum to their Schedule J. (Doc. 12.) According to the Addendum, Debtors' monthly expenses total $1,483.00 and Debtors' total monthly income amounts to $2,266.00. Debtors added $350.00 in expenses over the original Schedule J total—$175.00 for medical and dental expenses and $175.00 for transportation (not including car payments). Debtors allege that they incurred these new expenses due to William H. Graham's injuries. Debtors asserted then that their monthly disposable income amounts to $783.00.

On June 8, 1998, a Meeting of Creditors was held pursuant to 11 U.S.C. § 341. (Doc. 13.) The Trustee presided over the meeting. No creditors appeared.

No party objected to Debtors' claim of exemption in the personal injury claim within thirty days of the § 341 meeting.

On September 25, 1998, Debtors filed their Second Amended Chapter 13 Plan ("the Plan"). (Doc. 14.) The Plan provides that Debtors pay $783.00 per month

to the Trustee for disbursement. The Plan states that "[t]he future income of the debtors is submitted to the supervision and control of the trustee ..." Debtors estimate in the Plan that unsecured creditors would receive six percent of their claims over the thirty-six month Plan.

The Plan does not require that Debtors put all of their "disposable income" toward the Plan for thirty-six months.

No party objected to confirmation of the Plan.

On December 30, 1998, the Court entered an Order Confirming Chapter 13 Plan. (Doc. 18.) The Order provides that Debtors pay $783.00 per month to the Trustee for 36 months. The Order does not require that Debtors put all of their "disposable income" toward the Plan for thirty-six months.

Shortly after confirmation, Debtors filed the personal injury claim in state court.

On August 15, 2000, Trustee filed her Motion to Modify. Trustee asserts that unsecured creditors could be fully repaid if only $10,575.00 from an impending $46,000.00 settlement of the personal injury claim was applied to the Plan.

On August 18, 2000, Debtors settled the personal injury claim. Debtors collected $46,040.88 ("the personal injury settlement") after attorney's fees and costs.

On August 18, 2000, Debtors filed their Objection to Trustee's Motion to Modify.

## CONTENTIONS OF THE PARTIES

Trustee argues that the personal injury claim is property of the estate under 11 U.S.C. § 541 and that the personal injury settlement, or some portion thereof, should be treated as "disposable income" under 11 U.S.C. § 1325(b) regardless of whether or not the settlement became exempt upon the expiration of the thirty-day period allowed to object to claimed exemptions under Rule 4003(b), FED. R. BANKR. P.

Debtors contend that the personal injury settlement became exempt upon expiration of the Rule 4003(b) thirty-day period and therefore cannot be tapped for repayment of creditors pursuant to 11 U.S.C. § 522(*l*) and § 522(c). Debtors further argue that the confirmed Plan is res judicata to any later efforts to alter a payment amount fixed by confirmation on grounds known to the party seeking modification at the time of confirmation.

## CONCLUSIONS OF LAW

### I. PERSONAL INJURY SETTLEMENT: PROPERTY OF THE ESTATE?

If an asset is property of a debtor at the time of petition, then that asset is property of the estate post-petition pursuant to 11 U.S.C. § 541. Section 541 provides, in relevant part:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541 (2001). Pursuant to 11 U.S.C. § 1306, all property acquired between commencement of a case under Chapter 13 and dismissal or conversion becomes property of the Chapter 13 estate. See 11 U.S.C. § 1306(a)(1) (2001).

Proceeds received postpetition by a debtor on account of a prepetition or postpetition personal injury claim are property of the estate pursuant to § 541 and § 1306. See In re Studer, 237 B.R. 189, 191 (Bankr.M.D.Fla.1998).

Therefore, the personal injury settlement received by Debtors after commencement of the Case is property of the estate under § 541 and § 1306 and therefore is eligible for distribution to creditors, absent a proper claim of exemption under § 522.

## II. PERSONAL INJURY SETTLEMENT: EXEMPT PROPERTY?

■ A debtor may exempt property of the estate from distribution to creditors by properly filing a claim of exemption in the property. *See* FED. R. BANKR. P. 4003(a). Under Rule 4003(b), a party in interest may file an objection to a claim of exemption within thirty days after a § 341 meeting of creditors. *See* FED. R. BANKR. P. 4003(b). Unless a party in interest objects to a claim of exemptions within the period allotted, the property becomes exempt. *See* 11 U.S.C. § 522(*l*) (2001). Once deemed exempt under § 522(*l*), the property may not be held "liable" for prepetition debts. *See* 11 U.S.C. § 522(c) (2001).

■ An exemption in property is conclusively established under § 522(*l*) once the thirty-day Rule 4003(b) period has elapsed, even if a debtor claiming an exemption had no colorable legal basis to do so. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.*

■ Additionally, the value of the exemption as claimed in a debtor's schedules does not limit the total amount exempted under *Taylor* and § 522(*l*). *See In re Green*, 31 F.3d 1098, 1100 (11th Cir.1994). If a debtor makes it clear in a schedule or claim of exemption that a debtor seeks to exempt an entire cause of action, then a debtor effectively exempts all eventual proceeds of the cause of action despite the assignment of a nominal value to the cause of action in the schedule or claim of exemption. *See id.*

■ The personal injury settlement in the instant case is exempt under § 522(*l*) and thus protected from liability for prepetition debts under § 522(c). Debtors claimed the settlement as exempt by their Addendum to Schedule C dated June 1, 1998. On June 8, 1998, the § 341 meeting was held, at which Trustee presided. No other party in interest attended. No party in interest objected to the claimed exemption in the personal injury claim during the thirty days following the § 341 meeting. Therefore, even if Debtors had no colorable claim of exemption in proceeds from the personal injury claim under Florida law or the Code, such proceeds became conclusively exempt under § 522(*l*) and *Taylor* upon the expiration of the thirty-day Rule 4003(b) period.

It is also irrelevant that Debtors valued the personal injury claim at one dollar. Trustee admits in her brief that Debtors scheduled the claim in good faith, and such low valuation of a contingent asset is typical bankruptcy practice. It is clear from the Addendum to Schedule C that Debtors intended to exempt the entire personal injury claim proceeds, not just the speculative value of one dollar.

Thus the Court comes to the decisive point of this dispute: whether or not a court may treat property deemed exempt from liability to creditors under Rule 4003(b), § 522(*l*), and *Taylor* as "disposable income" pursuant to § 1325(b)(1)(B).

## III. PERSONAL INJURY SETTLEMENT: DISPOSABLE INCOME?

■ There are two elements of the inquiry into whether or not the court may modify the confirmed Second Amended Plan in order to force Debtors into contributing some portion of the personal injury settlement toward paying off their debts.

First, the Court must determine whether or not property conclusively exempt under Rule 4003(b), § 522(*l*) and *Taylor* nevertheless may be treated as "disposable income" that a debtor must place in a trustee's control under § 1325(b)(1)(B).

Second, if the Court determines that exempt property may be "disposable income," then the Court must determine how much, if any, of the instant settlement is truly "disposable" under the definition of "disposable income" found in § 1325(b)(2).

A. **Is a lump-sum settlement conclusively exempted under Rule 4003(b), § 522(*l* ) and *Taylor* potentially "disposable income" under § 1325(b)(1)(B)?**

1. **The conflict between § 522(c) and § 1325(b)**

The instant dispute involves the difficulty of reconciling § 522(c), which provides for the exemption of certain assets from liability to prepetition creditors, with § 1325(b)(1)(B), which provides that, upon objection of a trustee or a secured creditor, a Chapter 13 debtor must place all of his disposable income into the hands of a trustee for distribution over the life of a plan.

Section 522(c) provides, in relevant part:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case ...

11 U.S.C. § 522(c) (2001).

Section 1325(b) provides, in relevant part:

(b)(1) If the trustee or the holder of an allowed secured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ...

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan ...

11 U.S.C. § 1325(b) (2001).

Congress apparently expressed its intention that exemptions function identically in Chapter 7 and Chapter 13 bankruptcies by placing the provision governing exemptions, § 522, in Chapter Five of the Code, entitled "Creditors, Debtors, and the Estate," instead of placing a separate exemption provision in each chapter.

 However, it is clear from practice that exemptions serve very different purposes in Chapter 7 as opposed to Chapter 13. The Court notes that the purpose of exemptions in Chapter 7 asset liquidation and in state debtor/creditor law is the protection of certain assets against forced sale. Such protection is not relevant to Chapter 13 cases, where a Chapter 13 debtor keeps all assets and surrenders income, except when conducting a liquidation analysis for confirmation purposes and when preserving objections in case of future conversion to Chapter 7.

This incongruity creates tension when a court is faced with a Chapter 13 debtor that earns significant and apparently "disposable" exempt income. On one hand, it seems unfair that a Chapter 13 debtor allowed to maintain possession of all of his assets in exchange for surrendering future income may nevertheless keep some "disposable" future income because of exemption rules that serve little purpose in Chapter 13. On the other hand, forcing a Chapter 13 debtor to surrender property explicitly made unavailable to creditors by state or Federal law seems contrary to the plain language of exemption statutes and § 522.

Predictably, there has been a diametrical split of authority on whether exempt property may be treated as "disposable income" in Chapter 13 cases.

2. **The Majority View: Property exempt under § 522(c) may nevertheless be treated as "disposable income" under § 1325(b)(1)(B).**

The vast majority of courts that have addressed the exemption/disposable income issue have found that § 522(c) does not operate to render any income from exempt property immune from treatment as "disposable income." *See In re Tolliver*, 257 B.R. 98, 101 (Bankr.M.D.Fla.2000) (listing courts standing in the majority and adopting their reasoning).

Generally, the majority courts begin by finding that there is an inherent difference between Chapter 7 and Chapter 13 that justifies subverting a § 522(c) exemption to the § 1325(b)(1)(B) "disposable income" test. *See e.g. In re Schnabel*, 153 B.R. 809, 817 (Bankr.N.D.Ill.1993). "Because the fresh start in Chapter 13 is protected by a debtor's ability to retain non-disposable income rather than exempt assets, the importance of exemptions is diminished." *See Tolliver*, at 100. The majority courts then conclude that the "disposable income" requirement is not subject to § 522(c) because it doesn't specifically state that it is subject to § 522(c)—the disposable income-tilted "plain language" argument. *See id.* at 101.

### 3. The Minority View: Property exempt under § 522(c) may not be treated as "disposable income" under § 1325(b)(1)(B).

The minority of courts concludes that exempt property may not factor into the "disposable income" analysis. *See In re Hunton*, 253 B.R. 580, 582 (Bankr.N.D.Ga. 2000) (listing courts standing in the minority).

In *In re Ferretti*, 203 B.R. 796, 800 (Bankr.S.D.Fla.1996), the court found that the Supreme Court's ruling in *Taylor* and the plain language and general applicability of § 522 mandated its finding that property exempt under § 522(*l*) (and therefore § 522(c)) may not be treated as "disposable income." *See Ferretti*, 203 B.R. at 799. "The clear language of [§ 522(c)] protects exempt property, regardless of form, from prepetition debts ... [t]his express limitation cannot be ignored for purposes of defining disposable income under [§ 1325(b)]." *Id.* This is the exemption-tilted "plain language" argument.

### 4. The Eleventh Circuit Solution in § 522(*l*) cases: *Gamble* and *Hunton*

Fortunately, the Eleventh Circuit recently provided this Court with controlling precedent that resolves exemption/disposable income disputes where the exemption at issue has been conclusively established under Rule 4003(b) and § 522(*l*) in combination with the rule of *Taylor*.

In *Gamble v. Brown (In re Gamble)*, 168 F.3d 442 (11th Cir.1999), the debtors moved for turnover of proceeds from the sale of a piece of real property. *See Gamble*, 168 F.3d at 444. The debtors argued that the property should be turned over because they had claimed the proceeds from the sale as exempt and because no party in interest had objected within thirty days of the exemption claim as required by Rule 4003(b). *See id.* The bankruptcy court refused to turn the exempt property over, finding that exempt property must be "safeguarded and preserved" from a debtor's use during a Chapter 13. *See id.* The Court of Appeals reversed. *See id.* at 445. The Court of Appeals found that the plain language of the Code mandated that property properly exempted under § 522(*l*) and Rule 4003(b) must be released to a debtor's use and enjoyment without any restrictions because of the implications of *Taylor*. *See id.* at 444. "To follow the bankruptcy court's holding would cause us to disregard this [thirty day Rule 4003(b)] time period for objecting, and in effect, extend the period for objecting to these exemptions until a debtor has completed the bankruptcy plan." *Id.* at 445. The *Gamble* court found that such a ruling would directly conflict with *Taylor*. *See id.* The *Gamble* court also belittled the distinction between Chapter 7 and Chapter 13 that underpins the majority courts treatment of exempt property as "disposable income":

Congress chose not to utilize more forgiving conditional language regarding exemptions. We disagree with the bankruptcy court's disregarding clear statutory language and holding that the trustee should safeguard the exempt property ... although the bankruptcy

court believes that the differences between chapters 7 and 13 warrant different results with exemptions, we cannot ignore ... the fact that chapter 13 uses the same exemptions under section 522 as chapter 7.

*Id.*

The principles of *Gamble* control disputes over the application of the "disposable income" test to § 522(*l*) conclusively exempt property. *See Hunton,* 253 B.R. at 582. In *Hunton,* the bankruptcy court faced a situation closely analogous to the facts in *Taylor* and *Gamble:* the debtors had claimed through a schedule amendment an exemption in a personal injury claim and the 4003(b) thirty-day deadline had passed, thus conclusively establishing the property as exempt under § 522(*l*). *See id.* at 581. The *Hunton* court found that *Gamble* controlled and mandated the finding that the disposable income requirement did not apply to property conclusively exempted under Rule 4003(b), § 522(*l*) and *Taylor. See id.* at 582. "[T]he Eleventh Circuit stated in unequivocal terms that '[o]nce the property is removed from the estate [through exemption], the debtor may use it as his own' ... [t]o subject the Debtor's exempt settlement proceeds to the claims of creditors, by treating the proceeds as 'disposable income,' would conflict with this Court's reading of *Gamble.*" *Id.* (quoting *Gamble,* 168 F.3d at 444).

The Court finds the reasoning of *Hunton* persuasive. The Court is of the opinion that, if a debtor's claimed exemption is established under § 522(*l*) through expiration of the Rule 4003(b) period without objection, then § 522(c), *Taylor* and *Gamble* operate to prevent a bankruptcy court from treating such exempt property as "disposable income" under § 1325(b).[1]

The Court notes that those courts that follow the majority approach and treat exempt property as "disposable income" usually lack the controlling guidance of the Eleventh Circuit's decision in *Gamble* or are faced with a fact situation wherein a debtor's claim of exemptions has not been conclusively established under § 522(*l*) and *Taylor. See Stuart v. Koch (In re Stuart),* 109 F.3d 1285 (8th Cir.1997) (finding that *Taylor* does not operate in the fashion that *Gamble* suggests); *Tolliver,* 257 B.R. at 101 (finding that debtor did not timely claim workmen's compensation proceeds as exempt under Rule 4003(a), thus making *Taylor, Gamble* and *Ferretti* inapplicable).

### 5. Application to the instant case

The Court finds that the instant case fits squarely into the rule of *Gamble* and therefore that the personal injury settlement may not be treated as "disposable income." Debtors properly claimed an exemption in the personal injury claim in the Addendum to Schedule C. The Rule 4003(b) period passed without objection. Thus, under § 522(*l*) and *Taylor,* the personal injury claim and any proceeds therefrom became conclusively exempt, no matter how viable the original claim of exemption.[2] Under the controlling precedent of *Gamble,* § 522(c) and *Taylor* operate to protect the conclusively exempt personal injury settlement from liability to

**1.** The Court is careful to note that this rule may not control situations where an objection to a claimed exemption has been timely filed. The Court acknowledges that, in the context of a timely filed objection to exemption, it would be forced to balance the majority and minority positions and choose one, thereby taking its place in string cite history.

**2.** The Court notes that, although the personal injury settlement became conclusively exempt, and perhaps conclusively "indisposable," upon the expiration of the Rule 4003(b) period, the Court maintained the power to withhold confirmation of the Plan on § 1325(a)(3) good faith grounds until the moment of confirmation. A debtor may be obliged to sacrifice some exempt income in order to satisfy the good faith standard, or the "disposable income" standard if an objection to confirmation is timely brought. Indeed, every Chapter 13 debtor before this Court must sacrifice some exempt income, because, under Florida law, wages are essentially exempt. *See* FLA. STAT. § 222.21.

creditors under Chapter 13 and Chapter 7. Therefore, the exempt personal injury settlement may not be applied to Debtors' Plan as "disposable income," but is released completely into the custody, use and enjoyment of Debtors without qualification.

The unsecured creditors may feel slighted at being denied full repayment by the purely procedural operation of a deadline. However, as the Supreme Court said in finding the Rule 4003(b) period conclusive in *Taylor*, "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor*, 503 U.S. at 644, 112 S.Ct. 1644. Additionally, the unsecured creditors will still receive more on their claims than they would have if Debtors had filed under Chapter 7.

**B. How much of the exempt lump-sum settlement is "disposable" under § 1325(b)(2)?**

Because the Court concludes that the personal injury settlement may not be tapped as "disposable income," it is unnecessary for the Court to determine what portion, if any, of the personal injury settlement is actually "disposable" under § 1325(b)(2).[3]

### CONCLUSION

The Court initially finds that the personal injury claim and resulting settlement are property of Debtors' estate pursuant to § 541 and § 1306(a). The Court then finds that the personal injury settlement is exempt under Rule 4003(b) and § 522(*l*). The Court finally concludes that the personal injury settlement may not be treated as "disposable income" under § 1325(b) because it was conclusively exempted under § 522(*l*) and thus protected from liability to prepetition creditors pursuant to § 522(c).

**3.** The Court notes that very little evidence was introduced on this point. William H. Graham did testify as to some additional expenses incurred as a result of his personal injuries;

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.

however, Debtors did not present any evidence specifically linking the settlement with actual damages and future or unpaid medical expenses.