**In re John Thomas MCGOVERN, Debtor.**

No. 01–34694–BKC–SHF.

United States Bankruptcy Court, S.D. Florida.

May 24, 2002.

890

Robin Weiner, Attorney at Law, Fort Lauderdale, FL, Chapter 13 Trustee.

Thomas L. Abrams, Ft. Lauderdale, FL, for Charles Grapski.

James E. Copeland, Palm Beach Gardens, FL, for John McGovern.

***ORDER SUSTAINING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN BY CREDITOR CHARLES GRAPSKI AND DENYING MOTION TO DISMISS CHAPTER 13 CASE***

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came on to be heard on April 8, 2002, to consider confirmation of the Debtor's proposed chapter 13 plan, and also to consider the motion to dismiss this case filed by creditor Charles Grapski ("Grapski"). This case was commenced on September 5, 2001 with the Debtor's filing of his chapter 13 petition, and the Debtor filed his chapter 13 plan on October 14, 2001. Subsequently, Grapski filed his objection to confirmation of the chapter 13

plan and a motion to dismiss chapter 13 case. For the reasons set forth below, Grapski's objection to confirmation of the chapter 13 plan is **sustained,** but Grapski's motion to dismiss chapter 13 case is **denied.**

## FACTUAL BACKGROUND

The filing of the instant chapter 13 proceeding emanates from a dispute between the Debtor and Grapski which occurred when both were involved in a University of Florida student body election in the mid–1990s. Following the election, Grapski filed suit in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida, resulting in the entry of judgment in favor of Grapski against the Debtor on December 14, 1999 in the amount of $83,608.38. The Debtor conceded, at the Court's April 8, 2002 hearing, that his obligation to Grapski, listed on his schedules as $80,880.38, would be non-dischargeable if the Debtor had filed a chapter 7 proceeding, but maintained that the debt is dischargeable under chapter 13. Grapski, in his objection to confirmation and motion to dismiss, asserted that due to the Debtor's lack of candor and honesty in the preparation of his bankruptcy schedules, his failure to disclose the full extent of his income, his failure to accurately delineate his expenses, and his motivation in seeking relief under chapter 13 (i.e., to discharge at least a portion of the debt owed to Grapski), the chapter 13 proceeding is being pursued in bad faith, and accordingly, should be dismissed.

## I. Motion to Dismiss

■■■ Pursuant to 11 U.S.C. § 1307(c), a chapter 13 case may be dismissed for "cause". 11 U.S.C. § 1325(c). The filing of a chapter 13 petition in bad faith can constitute such "cause". *See, e.g., In re Newsome,* 92 B.R. 941, 943–44 (Bankr.

M.D.Fla.1988); *In re Bandini,* 165 B.R. 317, 319 (Bankr.S.D.Fla.1994). To determine whether a petition was filed in good faith, bankruptcy courts must look at the totality of circumstances. *See In re Bertelt,* 250 B.R. 739, 745 (Bankr.M.D.Fla. 2000).

■■■ The Eleventh Circuit has enumerated several factors for bankruptcy courts to consider in determining whether a chapter 13 debtor has acted in good faith. *See In re Kitchens,* 702 F.2d 885, 888–889 (11th Cir.1983). The *Kitchens* court adopted the following factors:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of the attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan administration would place on the trustee.

*Id.,* citing *In re Kull,* 12 B.R. 654, 659 (S.D.Ga.1981).

The Court added several additional factors considered by other Circuits. These include: (1) "the substantiality of repayment to the unsecured creditors", (2) ex-

ceptional circumstances that may support a finding of good faith, and (3) "the type of debt to be discharged and whether such debt would be non-dischargeable under chapter 7". *Id.* at 889. The Court also noted that the enumerated factors were not exhaustive and were merely a guide for bankruptcy courts. *Id.* at 889.

■ *Sub judice,* certain factors weigh in favor of a finding that the petition was filed in bad faith, while other factors are indicative of a good faith filing. The Debtor does have significant income. He currently receives a salary of $75,000 a year as an attorney with the law firm of Montgomery & Larson in West Palm Beach, Florida. Additionally, his living expenses listed on Schedule J appear unusually high for a chapter 13 debtor.[1] Also, approximately two months before filing his petition, the Debtor entered into a lease for a luxury automobile, a 2001 Audi A6. The monthly lease payment for the Audi A6 is $445. The lease payments for Debtor's prior automobile, a 1999 Toyota Solara, were $335 per month.[2] The Debtor testified that he agonized for some time about the filing of his petition, and that he decided to file a petition for bankruptcy protection only when he had no other choice. However, a mere two months before filing his petition, he leased a luxury automobile. By then, the Debtor had accrued all of the debts which he now seeks to discharge. Such action does not evidence an abundance of good faith by the Debtor in attempting to rearrange his financial affairs.

In addition, the chapter 13 plan proposed by the Debtor is for a duration of thirty-six months. Most chapter 13 plans proposed in this District are for a period of sixty months, to enable debtors who are delinquent in home mortgage payments a maximum period within which to cure their delinquency. The combination of the Debtor's high income, short plan period, and unreasonable expenses combine to illustrate that this debtor is not exerting an exhaustive effort to satisfy the claims of his creditors, further calling into question the Debtor's good faith in proposing his chapter 13 plan.

The Court also finds troubling the timing of the filing for bankruptcy protection. The petition was filed on the eve of a deposition in aid of execution on the final judgment entered in favor of Grapski. Additionally, the Debtor received a bonus of $10,000 from his employer contemporaneously with the filing of his petition. The bonus is not included or referred to in the Debtor's Statement of Financial Affairs, as would have been appropriate.

The Debtor testified that he desires to pay creditors, including Grapski, the maximum amount possible, receive a discharge and move on with his life. Nevertheless, the Debtor proposes a plan that is for only thirty-six months, rather than one of a longer duration, and proposes to pay unsecured creditors only eleven percent of their respective claims. The proposed plan is designed primarily to satisfy the Debtor's desire to receive a discharge, rather than to provide a meaningful dividend to creditors. This factor, along with the other indicia of bad faith, causes this Court to suspect that the Debtor's true motivation in filing his petition is to pay Grapski as little as possible. However, this Court is reluctant take the drastic step of denying the Debtor any opportuni-

1. The reasonableness of the Debtor's expenses listed on Schedule J are thoroughly addressed in the discussion concerning the objection to confirmation *infra.*

2. The Debtor was driving, and paying the lease payments, on a 1999 Toyota Solara leased by his father.

ty to receive a discharge and obtain a fresh start.

Even though there are considerable factors to support a finding that the Debtor filed his petition in bad faith, the Court finds persuasive the countervailing indicia of good faith. While testifying during the April 8, 2002 hearing, the Debtor seemed genuinely contrite as to the circumstances giving rise to his obligation to Grapski, and professed a desire to repay his debts as best he could over the course of his chapter 13 plan. The Court is satisfied that the Debtor's motivation in seeking relief under Chapter 13 is to obtain a fresh start and make substantial payment to his creditors, even if the chapter 13 plan as proposed does not satisfactorily fulfill such a goal. The Debtor ostensibly has dealt honestly and candidly with the Court during the pendency of his bankruptcy case. Additionally, the Debtor has never before sought relief under the Bankruptcy Code.

■ It is apparent to the Court that the Debtor made serious errors in judgment that unfortunately resulted in considerable damage to Grapski, giving rise to a substantial portion of the debt that the Debtor now seeks to discharge. However, the mere fact that he seeks to discharge, in a chapter 13 bankruptcy, a debt that would be non-dischargeable under chapter 7 is not *per se* bad faith. *See In re White*, 273 B.R. 279, 282 (Bankr.M.D.Fla.2001). Considering the large amount of otherwise dischargeable debt, the Court does not regard the mere presence of one non-dischargeable obligation as tainting Debtor's filing of his petition under Chapter 13 with bad faith. Given the totality of the circumstances, the Court does not find that the *petition* was filed in bad faith.

## II. Confirmation of the Chapter 13 Plan

■ Pursuant to 11 U.S.C. § 1325, a chapter 13 plan, to be confirmed, must be proposed in good faith. 11 U.S.C. § 1325(a)(3). The Debtor has the burden of proving that the Plan has been proposed in good faith. *See In re Norman*, 162 B.R. 581, 583 (Bankr.M.D.Fla.1993) citing *In re Yavarkovsky*, 23 B.R. 756 (S.D.N.Y.1982). Additionally, when a debtor seeks a "superdischarge"[3] the burden is even greater. *See Id.* In making the determination whether a plan has been proposed in good faith, a court will consider the totality of circumstances. *See In re Humphrey*, 165 B.R. 508, 510 (Bankr.M.D.Fla.1994). In making this determination, the *Kitchens* factors discussed *supra* are relevant. Under the instant circumstances, this Court will not approve a chapter 13 plan as being proposed in good faith which provides for payments only for the minimum thirty-six month period, and only a *de minimis* dividend to unsecured creditors. *See In re Chase*, 28 B.R. 814, 817 (Bankr.Md.1983). "While good faith does not require a plan of greater duration than the 3–year statutory minimum, it remains a factor the Court must consider in its good faith analysis." *In re Baird*, 234 B.R. 546, 552 (Bankr.M.D.Fla.1999).

■ Additionally, a substantial amount of the aggregate debt which the Debtor seeks to discharge is the claim of Grapski, which would be non-dischargeable in a chapter 7 proceeding. While substantiality of payment to creditors is not a requirement under chapter 13, it is a factor to consider in determining debtor's good faith, especially if the debtor is seeking a "superdischarge". *See Id.* citing *In re Dant*, 9 B.R. 117 (Bankr.E.D.Va.1981) (re-

---

**3.** A "superdischarge" is a discharge of a debt in a chapter 13 bankruptcy that would not be dischargeable under chapter 7.

fusing confirmation because small payout unreasonable and indicative of bad faith); *In re Caldwell,* 895 F.2d 1123 (6th Cir. 1990) (finding bad faith when plan sought to repay 36.6% of debt that would be non-dischargeable in chapter 7); *In re Dillon–Bader,* 131 B.R. 463, 465 (Bankr.D.Kan. 1991) (holding plan with a small payout for a debt non-dischargeable under chapter 7 not proposed in good faith); *In re Kourtakis,* 75 B.R. 183, 187–88 (Bankr. E.D.Mich.1987). Looking at the totality of the circumstances, the indicia of the Debtor's lack of good faith are not sufficient to deny him any opportunity to receive a discharge under chapter 13. However, the Court finds that a debtor cannot propose a plan in good faith for the statutory minimum period of thirty-six months that proposes to pay only eleven percent of debts that would be non-dischargeable under chapter 7, when the debtor has the wherewithal to fund a plan of longer duration to increase the payout on such debts.

Aside from the requirement that the plan be filed in good faith, if a holder of an allowed unsecured claim objects to confirmation of the plan, the plan must either pay the objector's claim in full or devote all of the debtor's disposable income to the plan. *See* 11 U.S.C. § 1325(b)(1). Under the Debtor's proposed plan, unsecured creditors will be paid $550.00 for 36 months.[4] Thus, unsecured creditors would receive $19,800 on total claims of $186,337.16, or eleven percent of their respective claims. Grapski, who holds an unsecured claim, objected to the Plan. Therefore, since unsecured creditors will not receive full payment on their claims,

the Debtor must devote all of his disposable income to the plan.[5]

Disposable income is income "which is not reasonably necessary to be expended for the maintenance or support of the debtor". 11 U.S.C. § 1325(b)(2). There are two issues before the Court concerning the Debtor's disposable income: (1) what is the Debtor's income, and (2) what expenses are "reasonably necessary".

On Schedule I, the Debtor lists his total monthly net income as $4,393.44. However, the income listed on Schedule I does not include bonuses which the Debtor received or which he may receive post-petition, and does not provide for any possible future raises. The issue of whether bonuses must be included in the Debtor's income is dependent on whether the Debtor has already received the bonus.

 The Debtor is not contractually entitled to receive any bonuses or raises from his employer. The mere fact that it is possible that he may receive bonuses or raises in the future does not require the chapter 13 plan to reflect that contingency. "As a practical matter, unless there are changes which can *clearly* be foreseen, the court [for a three-year plan] must simply multiply the debtor's current monthly income by 36." 8 *Collier on Bankruptcy* ¶ 1325.08[4][a] (15th ed. rev.2001) (emphasis added). Therefore, absent evidence that the Debtor is certain to receive bonuses or raises of a known amount, such bonuses or raises are too speculative to include in income. Nonetheless, pursuant to section 1329(a) the plan may be modified to deal with any extraordinary or substantial unforeseen changes. *See In re*

---

**4.** The Debtor will make 36 payments of $605.00. However, $55.00 a month will go to the chapter 13 trustee.

**5.** Pursuant to the modifications dictated by the Court, *infra,* if the Debtor were to extend the term of his chapter 13 plan to sixty

months, he would pay an aggregate of $75,191.76 (not including the net amount of the bonuses already received) to his unsecured creditors, for a dividend of approximately forty-one percent.

*Powers,* 202 B.R. 618, 620 (9th Cir. BAP 1996). A holder of an allowed unsecured claim may request such a modification of the plan. *See* 11 U.S.C. § 1329(a).

The Debtor received two bonuses from his employer post-petition but prior to the date of the confirmation hearing. He received a $10,000 bonus in the last quarter of 2001, as well as a Christmas bonus of $5,000. The Debtor is entitled to claim the same exemptions as a chapter 7 debtor. However, the purpose of claimed exemptions in a chapter 13 proceeding is to conduct the liquidation analysis, so that the Court can determine if the chapter 13 plan meets the "best interest of creditors" test. *See In re Graham,* 258 B.R. 286, 290 (Bankr.M.D.Fla.2001). Exempt income is not excepted from inclusion in the disposable income analysis under 11 U.S.C. § 1325(b)(2)(A). *See In re Florida,* 268 B.R. 875, 880 (Bankr.M.D.Fla.2001); *In re Tolliver,* 257 B.R. 98, 100–01 (Bankr. M.D.Fla.2000) (holding that exempt income is included in disposable income analysis).

The post-petition bonuses are income of the Debtor subject to the disposable income test. *See In re Stephens,* 265 B.R. 335, 337–38 (Bankr.M.D.Fla.2001) (otherwise exempt proceeds from a worker's compensation settlement are subject to the disposable income analysis). Some courts in the Eleventh Circuit have found that exempt property is not subject to the disposable income analysis based upon *In re Gamble,* 168 F.3d 442 (11th Cir.1999). *See, e.g., In re Graham,* 258 B.R. 286, 291 (Bankr.M.D.Fla.2001). Those decisions can be distinguished from the facts in the instant case. The exempt property in *Graham* was properly claimed as exempt and no objections were filed. In the case *sub judice* the bonuses were not claimed as exempt and the reasoning of *Gamble* does not apply. Therefore, whether the bonuses *may* be exempt as wages is not relevant to the disposable income analysis. The fact that the Debtor did not immediately turn over the bonuses is not evidence of bad faith. The Debtor was under the reasonable, although mistaken, belief that he was not required to do so. However, unless a subsequently-filed amended chapter 13 plan provides for payment of the net amount of these bonuses to the chapter 13 trustee, confirmation of the plan will be denied as failing the disposable income test.

Grapski also contends that the Debtor's income is understated because he does not claim the appropriate number of exemptions for tax withholding purposes. Thus, the amount of federal income taxes withheld from his paycheck is arguably too high. However, the Court is not persuaded that claiming zero exemptions for withholding purposes artificially reduces the Debtor's income. The calculation proposed by Grapski at the hearing is too speculative for the Court to apply. Merely looking at an IRS publication to discern the difference in amount that would be withheld claiming zero exemptions or one exemption fails to establish that the Debtor has artificially overestimated his federal tax liability.

To ascertain disposable income, the Court must determine the income which is "not reasonably necessary to be expended for maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2). Once an objection to confirmation of a debtor's chapter 13 plan is raised, a court has the duty to examine all of the proposed expenses to determine which are reasonably necessary. *See In re Jones,* 55 B.R. 462, 466–67 (Bankr.D.Minn.1985) (court's duty to apply "reasonably necessary" standard to all expenses—even those not objected to by a creditor); *In re Gleason,*

267 B.R. 630, 633 (Bankr.N.D.Iowa 2001); *In re Bell,* 264 B.R. 512, 516 (Bankr. S.D.Ill.2001) citing *In re Jones,* 55 B.R. 462, 467 (Bankr.D.Minn.1985). Unfortunately, a bright line test to determine what expenses are reasonably necessary has not been established in the Eleventh Circuit. *See In re Presley,* 201 B.R. 570, 575 (Bankr.N.D.Fla.1996). The legislative history of 11 U.S.C. 1325(b) is also "singularly vague and unenlightening" on what constitutes reasonably necessary expenses. *See In re Jones* at 465. The legislative history "contemplates a substantial effort by the debtor to pay his debts", and furthermore, "[s]uch an effort may require some sacrifices by the debtor." *Id.* (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 22 (1983)).

No consensus has emerged on what standard should be used to determine reasonably necessary expenses. However, most courts have adopted one of two standards. *See In re Cameron,* 243 B.R. 117, 122 (M.D.Ala.1999) (discussing the two standards that have emerged while not clearly adopting either one). Under one standard, a court does not scrutinize expenses, but merely looks for luxury items or obvious indulgences. *See Id.; In re Burgos,* 248 B.R. 446, 449 (Bankr.M.D.Fla. 2000) (allowing confirmation as long as payments exceed disposable income listed in statements); *In re Leonard,* 231 B.R. 884, 888 (E.D.Pa.1999) (only luxury items and obvious indulgences should be excluded); *In re Navarro,* 83 B.R. 348, 355 (Bankr.E.D.Pa.1988) (court should not mandate drastic changes to debtor's lifestyle).

Under the other standard, the court determines what expenses are not necessary for a reasonable lifestyle. *See, e.g., In re Cameron* at 122; *In re Helms,* 262 B.R. 136, 140–41 (Bankr.M.D.Fla.2001) (adopting majority rule that only allows expense if necessary for maintenance or support);

*In re Webb,* 262 B.R. 685 (Bankr.E.D.Tex. 2001) (if expenses in the aggregate exceed basic needs, the plan fails the disposable income test); *In re Dunn,* 225 B.R. 393, 400 (Bankr.S.D.Ohio 1998) (reasonably necessary means adequate); *In re Zaleski,* 216 B.R. 425, 431 (Bankr.D.N.D.1997) (Section 1325(b) should allow a debtor to maintain a "reasonable lifestyle"); *In re Jones,* 55 B.R. 462, 466 (Bankr.D.Minn. 1985) (only expenses for basic needs should be allowed); *In re Gillead,* 171 B.R. 886, 890 (Bankr.E.D.Ca.1994) (adopting *Jones* standard with some modifications).

A majority of courts have held that, regardless of the standard applied, no clear test is appropriate and a determination of the expenses reasonably necessary must be made on a case-by-case basis. *See, e.g., In re Cameron* at 124 (holding bankruptcy court clearly erroneous in applying the Collection Financial Standards to determine allowable expenses, instead of reasonably necessary standard); *In re Taylor,* 243 F.3d 124, 129 (2nd Cir.2001) (within discretion of bankruptcy court judge to determine, based on facts of individual case, if retirement contributions reasonably necessary); *In re Smith,* 207 B.R. 888, 890 (9th Cir. BAP 1996) ("blanket rule" disallowing life insurance premiums inappropriate); *In re Bell* at 516 (determination must be case-by-case analysis based on all circumstances); *In re Easley,* 72 B.R. 948, 949 (Bankr.M.D.Tenn.1987) (reasonable expenses question of fact).

 In order to determine what expenses are reasonably necessary, the Court must make its own analysis of whether expenses are necessary for the Debtor to live a reasonable lifestyle. This Court agrees with the line of cases holding that only expenses necessary for a reasonable lifestyle will be allowed.

 In general, the Debtor has proposed expenses that do not substantial-

ly deviate from his extremely comfortable pre-petition lifestyle. The Court is not swayed by the Debtor's contention that his expenses are altogether reasonable, considering his position as an attorney with Montgomery & Larson. The Court understands that the Debtor ostensibly may be required to spend relatively high amounts on clothing to appear professional and to drive a newer four-door automobile to impress clients. However, the expenses as proposed border on the extravagant. In some instances, the proposed expenses exceed the amount previously spent by the Debtor. Thus, the Debtor's disposable income as listed is significantly understated.

■ Specifically, the Court finds ten categories of expenses to be either excessive, or for luxury items and services. First, the Debtor lists his utility expense as $150.00. However, since living in his current apartment, only one utility bill has ever reached that amount. The average of the Debtor's utility bills for the seven months that he has resided in his current apartment is $97.44.[6] Therefore, any allocation for utility expense that exceeds $100.00 is unreasonable. Under any standard, a chapter 13 debtor cannot spend more on an expense item than he was spending pre-petition without a showing of necessity.

Second, the Debtor lists his personal telephone expense at $120.00 per month. This amount is clearly excessive. Standard local telephone service generally costs no more than $40.00 per month. Ad-

ditionally, the local and long distance phone bill supplied by the Debtor totals only $100.24. This amount still seems excessive; however, the Court will not deem the Debtor's monthly telephone expense of approximately $105.00 to be unreasonable.

Third, the Debtor contends that he is required to spend $625.00 on food each month because of his long hours at work, requiring him to eat many meals away from home.[7] This amount is excessive, considering that the Debtor is single with no dependents. Many families with very hectic schedules manage to expend less on food than the Debtor individually proposes to spend. The notion, proposed by this Debtor, that he eats a vast majority of his meals at expensive dining establishments, at his creditors' expense, is unpersuasive, particularly since such meals typically would be paid or reimbursed by the Debtor's employer. Any amount over $500 per month for food would be excessive.

Fourth, the Debtor claims that he spends $162.00 per month for laundry and dry cleaning. The Court does not disagree that it is entirely feasible for the Debtor to spend that much per month. However, for the Debtor to spend that amount he must be dry cleaning his suits virtually every time he wears them, and he must be sending his other clothing out to be laundered, rather than doing the laundry himself. This debtor should not reasonably spend more than $120.00 per month on laundry and dry cleaning.

---

6. The Debtor submitted six months of utility bills. One month was missing, but the subsequent bill stated the amount from the previous bill. Thus, the average is based on seven months of utility usage.

| Service Dates | Amount of Bill |
| --- | --- |
| February 13, 2001 to March 14, 2001 | 57.73 |
| March 14, 2001 to April 12, 2001 | 85.25 |
| April 12, 2001 to May 11, 2001 | 67.86 |
| May 11, 2001 to June 12, 2001 | 89.46 |
| June 12, 2001 to July 12, 2001 | 112.90 |
| July 12, 2001 to August 10, 2001 | 118.87 |
| *August 10, 2001 to September 11, 2001* | 150.01 |
| Total for seven month period | 682.08 |
| **Monthly Average** | **97.44** |

7. The Debtor testified that he typically is required to be at work by 8:00 a.m. or 9:00 a.m., and generally does not return home until 6:00 p.m. or 7:00 p.m. The Court hardly considers such a schedule to preclude the Debtor from eating most meals at home.

Fifth, the Debtor lists monthly lease payments for an automobile at $445.00. These payments are for a 2001 Audi A6 (the "Audi"). Prior to leasing the Audi, the Debtor drove a two-door 1999 Toyota Solara for which he made lease payments of $345.00 per month. The Debtor contends that he leased the Audi because he needed a four-door automobile, and because he got such "a great deal". The Court does not question that it may have been a great deal to lease a 2001 Audi A6 for a *mere* $445.00 per month. However, the lease of a luxury automobile is more than the Debtor would be required to pay for a sensible economy automobile while in a chapter 13 proceeding. Courts have routinely held that luxury vehicles are not reasonably necessary expenses. *See, e.g., In re Zaleski,* 216 B.R. 425, 432 (Bankr. D.N.D.1997) (1996 Blazer "absurd luxury bordering on the lifestyles of the rich and famous"); *In re Reyes,* 106 B.R. 155, 158 (Bankr.N.D.Ill.1989) (payments for Blazer not reasonably necessary); *In re Rogers,* 65 B.R. 1018 (Bankr.E.D.Mich.1986) (payments for a Corvette not reasonably necessary). Thus, the Debtor's monthly automobile expenditure should not exceed $345.00, the amount which the Debtor was paying for an automobile pre-petition.

Sixth, the Debtor's proposed expense for transportation is $200 per month. This amount appears excessive. As previously discussed, the Debtor leases an automobile. That lease provides that the Debtor will be charged for excessive wear if the automobile is driven more than 48,905 miles over the thirty-nine month lease term. Accordingly, each month, the Debtor may drive an average of 1,254 miles without incurring a charge for excessive wear[8], or a daily average of 42 miles.[9]

This seems a more than reasonable provision for daily mileage, considering the Debtor's apartment and office are both located in West Palm Beach, Florida. Determining projected mileage under the terms of the lease is the most reasonable basis for determining the Debtor's monthly transportation expense. If the Debtor thought his projected mileage would significantly exceed that which the lease allowed, without charging for excessive wear, entering into the lease would not make sense from a standpoint of economy. Therefore, the average monthly cost for gas should not exceed $90.[10] The Court acknowledges that the Debtor may also incur additional transportation expenses. An additional $35.00 to cover such expenses or fuel costs for excessive mileage would be reasonable. Thus, a total monthly transportation cost of $125 per month is deemed reasonably necessary. *See In re Zaleski,* 216 B.R. 425 (Bankr.D.N.D.1997) (cost of $200 for gas and oil is excessive).

Seventh, the Debtor listed an expense of $166.00 for "Estimated Additional IRS Taxes". Grapski specifically objected to this expense item because in previous years the Debtor had received tax refunds. The Debtor has the ultimate burden of persuasion to prove that his projected expenses are reasonably necessary. *See In re Webb,* 262 B.R. 685 (Bankr.E.D.Tex. 2001). The Debtor provided no basis for this expense, so it must be disallowed in full.

Eighth, the Debtor lists an $80.00 monthly expense for house cleaning. The Debtor contends that he is unable to clean his apartment because of his work hours. However, biweekly housecleaning is a lux-

---

**8.** 48,905 miles ÷ 39 months = 1,253.97 miles per year

**9.** 1,253.97 ÷ 30 days = 41.8 miles per day

**10.** 1,254 miles ÷ 25 miles per gallon * $1.80 per gallon = $ 90.28

ury few people enjoy—particularly those who are financially distressed. Therefore, the entire amount for this expense is unreasonable.

The Debtor also lists recreational expense of $150.00 per month. The Court agrees that a chapter 13 debtor should be permitted some allowance for recreational purposes even though such expense could not be characterized as a basic need. However, $150.00 for one person is excessive. The maximum amount that would be reasonably necessary for this debtor, who is without dependents, is $100.00 ($25.00 per week).

Lastly, the Debtor lists his monthly expenses for haircuts and grooming as $75.00. This amount appears to be an obvious indulgence. While as a "professional", the Debtor may need to get a haircut often, but to expend this amount, the Debtor must be frequenting relatively expensive salons. The Court's perception is that one can go to any number of barbers or national chains and obtain a haircut for no more than $15.00. Therefore, any amount for grooming over $30.00 per month for this Debtor is not reasonably necessary.

The Debtor's reasonably necessary expenses, as determined by the Court, are $3,001.00 per month or $36,012.00 per year.[11] This amount in no way can be viewed as depriving the Debtor a comfortable lifestyle, especially considering that he is a single man with no dependents. The Debtor will continue to enjoy a lifestyle that a vast majority of debtors in this District, as well as non-debtors, do not enjoy.

The Debtor's argument that creditors will receive substantially more under his chapter 13 plan than under a chapter 7 liquidation is not relevant. The "best interest of creditors" test under 11 U.S.C. § 1325(a)(4) is separate from the requirement, pursuant to 11 U.S.C. § 1325(b)(1), that debtors devote all of their disposable income to plan payments. *See In re Reyes*, 106 B.R. 155, 158 (Bankr.N.D.Ill. 1989) (argument that best interest of creditors test was met is a misguided defense to failure of disposable income requirement).

Therefore, under the disposable income requirement, the Debtor is required to make plan payments totaling at least $50,847.84, plus the net amount of the two bonuses received post-petition. If the Debtor is unwilling to make payments totaling such amount over a thirty-six month period, cause exists to extend the Plan to sixty months to enable him to satisfy the disposable income requirement. *In re Brooks*, 241 B.R. 184, 187 (Bankr.S.D.Ohio 1999) (noting that debtors could extend plan beyond thirty-six months to retain motor home); *In re Mendoza*, 274 B.R. 522 (Bankr.D.Ariz.2002) (holding that debtors could continue to make retirement contributions from disposable income if they extended the plan period beyond thirty-six months). Accordingly, it is hereby

**ORDERED:**

1. Creditor Charles Grapski's Motion to Dismiss chapter 13 case is denied.

2. Creditor Charles Grapski's Objection to Confirmation of the chapter 13 plan is sustained and confirmation of the Debtor's Chapter 13 plan is denied.

3. The Debtor shall file an amended chapter 13 plan, incorporating the foregoing changes, no later than **June 10, 2002** or this case shall be dismissed without further notice or hearing.

---

**11.** Appendix A lists the Debtor's income, his proposed expenses from Schedule J, the maximum reasonably necessary expenses, and calculates the Debtor's disposable income.

5. The confirmation hearing shall be held on **June 20, 2002 at 9:00 a.m.** at the **Paul G. Rogers Federal Building, 701** **Clematis Street, Courtroom 6, West Palm Beach, Florida.**

### Appendix A

| Income (From Schedule I) | 4,393.44 | |
|---|---|---|
| Expenses | Schedule J | Reasonable |
| Rent | 595.00 | 595.00 |
| Utilities | 150.00 | 100.00 |
| Telephone | 120.00 | 105.00 |
| Home Maintenance | 60.00 | 60.00 |
| Food | 625.00 | 500.00 |
| Clothing | 175.00 | 175.00 |
| Dry Cleaning, laundry | 162.00 | 120.00 |
| Medical & Dental Expenses | 75.00 | 75.00 |
| Transportation | 200.00 | 125.00 |
| Recreation | 150.00 | 100.00 |
| Charitable Contributions | 100.00 | 100.00 |
| Renter's Insurance | 35.00 | 35.00 |
| Auto Insurance | 158.00 | 158.00 |
| Auto Payment | 445.00 | 345.00 |
| Condo Assoc. Fee | 338.00 | 338.00 |
| Estimated Additional IRS Taxes | 166.00 | 0.00 |
| House Cleaning | 80.00 | 0.00 |
| Haircuts, grooming, etc. | 75.00 | 30.00 |
| Turnpike Tolls | 40.00 | 40.00 |
| Total Expenses | 3,749.00 | 3,001.00 |
| Total Yearly Expenses | 44,988.00 | 36,012.00 |
| Disposable Income per Month | 644.44 | 1,392.44 |
| Total Disposable Income for 36 months (not including bonuses already received) | 23,199.84 | 50,127.84 |
| Total Disposable Income for 60 months (not including bonuses already received) | 38,666.40 | 83,546.40 |

